## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MISSOURI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, REDDITT HUDSON, F. WILLIS JOHNSON and DORIS BAILEY, | **COMPLAINT** |
| Plaintiffs, | |
| v. | Civ. No. 14-2077 |
| FERGUSON-FLORISSANT SCHOOL DISTRICT and ST. LOUIS COUNTY BOARD OF ELECTIONS COMMISSIONERS, Defendants. | |

## INTRODUCTION

1.  This lawsuit is a challenge to the at-large election system utilized by the Ferguson-Florissant School District to elect members to its School Board, and seeks to replace it with a system in which School Board members are each elected from single-member districts.  The current at-large scheme impermissibly denies African-American voters an equal opportunity to participate in the political process and to elect representatives of their choice, in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2").

2.  The Ferguson-Florissant School District extends through numerous municipalities pursuant to a 1975 desegregation order intended to remedy the effects of discrimination against African-American students.  Today, African Americans constitute a minority of the voting age population of the District.  Under the current electoral system, they are systematically unable to elect candidates of their choice and are all but locked out of the political process.

1

## PARTIES

3.     Plaintiff the Missouri State Conference of the National Association for the Advancement of Colored People ("Missouri NAACP") is a state affiliate of the NAACP, the nation's oldest and largest civil rights organization. The Missouri NAACP's mission is to ensure the political, educational, social, and economic equality of rights of all persons, to eliminate racial hatred and racial discrimination, and to remove all barriers of racial discrimination through democratic processes.  Many Missouri NAACP members are African Americans who reside, work, and/or raise families in the District.  Among these members are numerous individuals, including Plaintiffs Redditt Hudson and F. Willis Johnson who reside in areas of the District that could constitute single-member districts in which African Americans are a majority of the voting age population, and where African Americans could elect their preferred candidates if the elections were not held at-large.

4.     As set forth in greater detail herein, the Missouri NAACP itself and its members suffer, among other injuries, an inability to carry out the mission of the organization because African-American voters in Ferguson-Florissant are denied the ability to elect candidates of their choice by the existing at-large voting system.

5.     Plaintiffs Redditt Hudson, F. Willis Johnson, and Doris Bailey are African Americans, registered voters, and residents of the District.  Plaintiff Hudson is the father of two children who attend school in the District, and has been active in local civic and school board affairs.  Plaintiff Johnson has been a candidate for the Ferguson-Florissant School Board.  Plaintiffs desire to participate in the electoral and political processes of the Ferguson-Florissant School Board on an equal basis with all other residents.

6.   Defendant Ferguson-Florissant School District (the "District") is a school district located in the greater St. Louis area.  The District serves more than 12,000 students from preschool through 12th grade, and covers all or part of 11 municipalities, including the towns of Ferguson, Florissant, Kinloch, and Berkeley.  Its headquarters are in Florissant.  The District is a governmental entity that maintains an electoral system comprised of seven at-large positions for the Ferguson-Florissant School Board (the "Board").  The Board is reponsible for the governance and administration of the Ferguson-Florissant School District, which is a political subdivision of the State of Missouri within the meaning of Article 4, Section 13, of the Missouri Constitution. All School Board positions are elected in an at-large general election.

7.   Defendant St. Louis County Board of Elections Commissioners (the "Commission") is the governmental entity charged with conducting elections in St. Louis County.  It is responsible for conducting elections for positions on the Board of the Ferguson-Florissant School District.

## FACTUAL ALLEGATIONS

### A.  The Ferguson-Florissant School District

8.   The Ferguson-Florissant School District serves an area whose history is fraught with discrimination against African-American citizens.  The borders of the municipalities were initially drawn along racial lines, established to avoid increasing African American voting strength, and kept in force by racial housing covenants.

9.   More than 20 years after the Supreme Court's ruling in *Brown v. Board of Education*, 347 U.S. 483 (1954), the State of Missouri and local municipalities continued to maintain a "small, segregated, inadequately funded" school district for African-American students in the area.  *United States v. Missouri*, 515 F.2d 1365, 1370 (8th Cir. 1975).  It was not until 1975 that, pursuant to a federal desegregation order, the Ferguson School District was required to annex the

neighboring segregated school districts of Berkeley and Kinloch, thus creating a new racially integrated district, the Ferguson-Florissant School District.

10. Since the implementation of the three-district desegregation plan in 1976, the demographics of Ferguson-Florissant have changed dramatically. What had been a racially integrated school district has now once again become segregated.

11. According to the 2010 U.S. Census, the Ferguson-Florissant School District's total voting-age population is 51,010, of whom 25,349 are white (49.69%) and 24,162 are Black (47.37%). Although African Americans are a minority of the Ferguson-Florissant School District's voting age population, they are a majority of its students. According to the U.S. Department of Education, National Center for Education Statistics, African-American students accounted for 77.1% of total enrollment in the Ferguson-Florissant School District in the 2011-2012 school year.

12. Meanwhile, although whites are nearly half of the District's voting age population, only 13% of the district's student body is white. This is significantly less than the 22.6% they made up just seven years ago. At present, approximately 68% of white school-age children who live in Ferguson or Florissant do not attend public schools in the District.

13. The Ferguson-Florissant School District faces significant challenges due to high rates of segregation and poverty. Over 60% of all students in the district qualify for free or reduced lunch. The District has only a 78% graduation rate. Among students attending the same schools, there is stark racial inequity in the provision of education and most aspects of student life. The District experiences significant racial disparities in terms of enrollment in gifted programs, access to advanced classes, assignment to special education programs, and school discipline.

**B.  The Ferguson-Florissant School Board**

14. The desegregation order that created the Ferguson-Florissant School District required that two seats on the then-six-member Ferguson School Board be declared vacant, to be replaced by designees of the Boards of the annexed African-American districts.  The four remaining members were to draw lots to determine the length of their individual terms in office to create staggered elections for an "initial period of stable governance for the new district."  *United States v. Missouri*, 515 F.2d at 1373.

15. Today, the Ferguson-Florissant School Board is composed of seven members, each serving for three years.  The members of the board serve staggered terms, such that either two or three seats of the seven seats are up for election each year.

16. The elections are held at-large and take place in April of each year.  The last at-large election for three seats on the School Board was held on April 8, 2014.

17. Despite the fact that African Americans are almost half of the School District's population and are a substantial majority of its students, there has never been adequate representation of African Americans on the Board.  At present, the Board has only one African-American member.

**C.  Section 2 of the Voting Rights Act**

18. Section 2 of the Voting Rights Act prohibits Defendants from applying or imposing any "voting qualification or prerequisite to voting or standard, practice, or procedure" that "results in denial or abridgement of the right of any citizen of the United States to vote on account of race or color."  52 U.S.C. § 10301(a).

19. In addition to prohibiting practices that directly deny the exercise of the right to vote, Section 2 prohibits vote dilution, which is the use of an electoral scheme—such as Ferguson-

Florissant's at-large method—that weakens the voting strength of minority voters, and consequently denies those voters an equal opportunity to elect candidates of their choice. 52 U.S.C. § 10301(b).

20. Unless enjoined by order of this Court, Defendants will continue to violate Section 2 by conducting elections for the Ferguson-Florissant School Board pursuant to the current at-large method in staggered April elections.

**D. *Thornburg v. Gingles* Preconditions**

21. The U.S. Supreme Court, in *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986), identified three necessary preconditions for a vote dilution claim under Section 2: (1) the minority group must be "sufficiently large and geographically compact to constitute a majority in a single-member district"; (2) the minority group must be "politically cohesive"; and (3) the majority must vote "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." Plaintiffs satisfy each of these criteria (the "*Gingles* preconditions").

22. *First*, the Ferguson-Florissant School District's African-American population is sufficiently numerous and geographically compact to allow for the creation of multiple properly-apportioned compact single-member districts for electing members of the Board of Education, in which African-American voters would constitute a majority of both the total population and the voting-age population.

23. *Second*, elections in the Ferguson-Florissant School District show a clear pattern of politically cohesive voting among African-American voters, who tend to prefer the same candidates.

24. *Third*, bloc voting by other members of the electorate consistently defeats African-American-preferred candidates for the School Board. The 2011, 2012, and 2013 Board of

Education elections provide recent examples of the manner in which bloc voting in the District has operated to defeat candidates preferred by African-American voters.  Although all seven Board seats were up for election in that three-year span, not a single African-American candidate who ran for office in that time period was elected.

25. These patterns have continued through the most recent elections in the Ferguson-Florissant School District.  In 2013, over the vigorous objections of African-American parents in the District including Plaintiff Hudson, the Board suspended and subsequently removed the District's first African-American school superintendent.  In response, an African-American community group slated three candidates for the April 2014 election.  Despite vigorous efforts and strong support in the African-American community, only a single African-American candidate was elected to one of the three available seats.  Plaintiff Johnson was one of the African-American candidates in 2014 for the Ferguson-Florissant School Board, and failed to win election that year.

### E.  Section 2 of the Voting Rights Act's Totality of the Circumstances Analysis

26. Section 2 requires that, after satisfying the *Gingles* preconditions, plaintiffs must establish that, "based on the totality of the circumstances," minority voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."  52 U.S.C. § 10301(b).  The Supreme Court in *Gingles* identified a list of nine non-dispositive, non-exclusive factors that are relevant to the totality of the circumstances inquiry.  *See* 478 U.S. at 36-37.

27. The totality of the circumstances demonstrates that African-American voters have less opportunity than other members of the electorate in the District to participate in the political

process and to elect representatives of their choice, based on each of the nine factors identified by the Supreme Court.

28. *First*, there is a significant history of official discrimination in the Ferguson-Florissant School District touching on the right of African Americans to register, to vote, and otherwise to participate in the democratic process. African American Voting Rights Legal Defense Fund, 994 F.Supp 1105, 1125 (E.D.Mo 1997) *aff'd* 133 F.3d 921 (8th Cir. 1998). Historically, African Americans in the Ferguson-Florissant School District have been subject to official and private discrimination. Missouri has a long history of state-sanctioned racial segregation and discrimination against African-American voters. Municipalities within the School District were initially drawn along racial lines and maintained through racial housing covenants. *See generally United States v. Missouri*, 515 F.2d 1365.

29. *Second*, as described above, voting in the elections of the Ferguson-Florissant School Board is racially polarized, as evidenced by the bloc voting patterns that have largely prevented African-American voters from electing their preferred candidates.

30. *Third*, the Ferguson-Florissant School Board has used voting practices or procedures that enhance the opportunity for discrimination against African-American voters, such as staggered terms, which place minority voters at a severe disadvantage, by limiting the number of seats in any election. Elections are also held in April rather than November, which generally produces lower turnout in the African-American community, rendering it more difficult to elect African-American preferred candidates.

31. *Fourth*, there is an informal candidate slating process from which African Americans have been denied access. The Ferguson-Florissant National Education Association is a local

teachers' union that has a large influence on the school board elections, and consistently chooses to endorse white candidates.  It has rarely endorsed African Americans.

32. *Fifth*, African Americans in the Ferguson-Florissant School District continue to bear the effects of discrimination, which hinders their ability to participate effectively in the political process.  As a result of the history of official and private discrimination, African-American residents have a lower socioeconomic status and lag behind white residents in a wide range of areas, including employment, income, education, and access to health care.  They also continue to face discrimination as targets of law enforcement and the criminal justice system.  Historical discrimination and resulting lowered socioeconomic status have hindered African Americans' ability to participate effectively in the political process in the Ferguson-Florissant School District, reinforcing the exclusionary effects of the existing at-large election scheme.

33. *Sixth*, political campaigns in the School District have been and continue to be characterized by subtle racial appeals.  For instance, in the highly polarized 2014 race, two of the successful white candidates stated that key issues facing the District were "discipline" and the creation of distraction-free learning environments so that students "feel safe."  Those comments, and others, were understood by African Americans as subtle racial appeals.

34. *Seventh*, African Americans have been elected to the Ferguson-Florissant School Board only sporadically.  There is currently only one African American on the seven-member Board, and there have been only two other African-American Board members in recent history, each of whom was voted out of office within the last four years.  None of the five African-American candidates in 2011, 2012, and 2013 were elected.  In 2014, despite strong support in the African-American community, a number of African-American candidates failed to win office, including Plaintiff Johnson.

35. *Eighth*, elected officials in the Ferguson-Florissant School District have not been responsive to the particularized needs of the African-American community.  For example, the Board has been insufficiently attentive to issues of educational equity facing African-American students in the District.  In 2013, the Board suspended and subsequently dismissed—without any public explanation of its reasoning—the District's first-ever African-American superintendent, who was widely admired and respected among African-American parents and students, and who was a strong advocate for educational equity.  The Board's willingness to do so without any public explanation, over the strenuous objections of African-American parents in the District including Plaintiff Hudson, further illustrates the Board's lack of responsiveness to the African-American community.

36. There is also a significant lack of responsiveness to the needs of the African-American community on the part of other local government officials.  Most notoriously, in August 2014, the City of Ferguson attracted national and international attention for racial tension and its oppressive and discriminatory police practices, after a police officer shot and killed an unarmed African-American teenager.  In the aftermath of the shooting, the Ferguson Police Department and local officials' unresponsiveness to the African-American community sparked widespread protests.  These protests were triggered by a number of events following the shooting that signaled local officials' disregard for the needs of Ferguson's African-American residents, including the police department's initial refusal and delay in releasing the name of the shooting officer; and the police department's excessive response to peaceful protesters, including the use of tear gas, armored vehicles, assault rifles, and military uniforms.

37. *Ninth*, any purported policy rationales underlying the existing at-large electoral scheme are tenuous.  For example, the original reason for conducting at-large elections with staggered

terms was to create an "initial period of stable governance" as the district underwent desegregation. *United States v. Missouri*, 515 F.2d at 1373. It no longer serves any valid purpose.

## JURISDICTION AND VENUE

38. This is an action for injunctive and declaratory relief under Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

39. Jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), and 52 U.S.C. § 10308(f). Venue is proper under 28 U.S.C. § 1391.

## DEMAND FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that the Court enter an order:

(a) Declaring that Ferguson-Florissant's at-large method of electing members to the Board of Education during the month of April violates Section 2 of the Voting Rights Act;

(b) Enjoining Defendants, their agents and successors in office, and all persons acting in concert with, or as an agent of, any Defendants in this action from administering, implementing, or conducting any future elections in the Ferguson-Florissant School District under the current at-large method of election during the month of April;

(c) Ordering the implementation of an election system for the Ferguson-Florissant School Board that complies with Section 2 of the Voting Rights Act and the Equal Protection Clause of the Fourteenth Amendment;

(d) Ordering that all future elections for the Ferguson-Florissant School Board comply with Section 2 of the Voting Rights Act and the Equal Protection Clause of the Fourteenth Amendment;

(e)  Granting Plaintiffs  attorneys' fees and costs they incur, pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

(f)  Granting any other relief that the Court may determine to be just and equitable.


Dated this 18th day of December, 2014.                   Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
GRANT R. DOTY, #60788MO
ANDREW J. MCNULTY, #67138MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Fax: (314) 652-3112

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
3601 Main Street
Kansas City, Missouri 64111
Phone: (816) 470-9938

DALE E. HO*
JULIE A. EBENSTEIN*
ACLU Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2693

M. LAUGHLIN McDONALD*
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303
Phone: (404) 500-1235

*pro hac vice motions forthcoming

ATTORNEYS FOR PLAINTIFFS