UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

MISSOURI STATE CONFERENCE OF
THE NATIONAL ASSOCIATION FOR
THE ADVANCEMENT OF COLORED
PEOPLE, REDDITT HUDSON,
F. WILLIS JOHNSON and
DORIS BAILEY,

                Plaintiffs,

v.

FERGUSON-FLORISSANT SCHOOL
DISTRICT and ST. LOUIS COUNTY
BOARD OF ELECTION
COMMISSIONERS,
                Defendants.

Civ. No. 4:14-cv-2077-RWS

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 3.04, Plaintiffs Missouri State Conference of the National Association for the Advancement of Colored People ("NAACP"), Redditt Hudson, F. Willis Johnson and Doris Bailey (together, "Plaintiffs"), respectfully move this Court to compel Defendant Ferguson-Florissant School District ("FFSD") to produce documents responsive to Plaintiffs' First Set of Requests for Production to FFSD, Request No. 11 (attached hereto as Ex. 1), including the personnel file of Dr. Art McCoy, the former superintendent for the Ferguson-Florissant School District ("the District").  In support of this Motion, Plaintiffs allege as follows:

**Background**

In this action, Plaintiffs allege that Defendant Ferguson-Florissant School District ("FFSD") violated Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, through the use of at-large April elections for seats on the Ferguson-Florissant School Board (the "Board").  To prove

1

their claim, Plaintiffs must establish that, "based on the totality of circumstances," minority voters "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b). The Supreme Court in *Thornburg v. Gingles* identified a list of nine non-dispositive, non-exclusive factors that are relevant to the totality of the circumstances inquiry. 478 U.S. 30, 36-37 (1986). One of these factors is whether or not elected officials in the District have been responsive to the particularized needs of the African-American community. *Id.* at 37. To that end, Plaintiffs allege that the Board has been insufficiently attentive to issues of educational equity facing African-American students in the District. A pivotal example of the Board's indifference is its suspension of the District's first African-American superintendent, Dr. Art McCoy, without public explanation and over the strenuous objections of African-American parents in the District, including Plaintiff Hudson. *See* Complaint, Doc. No. 1, at ¶ 35.

Plaintiffs served a discovery request seeking the production of Dr. McCoy's personnel file on March 4, 2015. *See* Ex. 1. In its April 14, 2015 response, FFSD objected to the request on the basis that Missouri law recognizes employees' right to privacy in employment records.[1] *See* Ex. 1. Plaintiffs met and conferred with FFSD by letter and/or email on April 23, April 28, April 30, May 1, and May 13, 2015.[2] Julie Ebenstein, counsel for Plaintiffs, and Cindy Ormsby,

---

[1] In its objection, FFSD cites *State ex rel. Delmar Gardens North Operating, LLC v. Gaertner*, 239 S.W.3d 608 (Mo. 2007) (en banc). However, as federal courts interpret *Delmar Gardens*, an expectation of privacy in employment records is not absolute and does not prevent the discovery of relevant evidence. *See The Weitz Co. v. McKenzie House, LLC*, No. 07-0103, 2010 WL 4683723, at *6 (W.D. Mo. Nov. 10, 2010) ("While employees enjoy a modicum of privacy in their employment records, this expectation is not so strong that it can resist rules of discovery or evidence. . . . [T]he Missouri Supreme Court did not (then or ever) intimate that the privacy expectation was strong enough to prevent the discovery or admission of relevant evidence."); *Crowe v. Booker Transp. Servs., Inc.*, No. 11-690, 2013 WL 394184, at *4 (W.D. Mo. Jan. 30, 2013) ("Where the information requested in the personnel file is sufficiently related to the issues in the pleadings, it is discoverable.").

[2] Counsel included on those emails were Julie Ebenstein, Dale Ho, Laughlin McDonald, Sophia Lakin and Grant Doty for Plaintiffs, Cindy Ormsby and Angela Bullock Gabel for FFSD Defendants and Donald Crotzer for St. Louis Board of Election Commissioners Defendants. For ease of reference, we have attached the correspondence between the parties. Letter from Julie Ebenstein, counsel for Plaintiffs, to counsel for Def. FFSD (April 23, 2015)

counsel for FFSD, met and conferred by phone on May 14, 2015.  FFSD has acknowledged that it has Dr. McCoy's file, although the file is sealed by a settlement agreement between the FFSD and Dr. McCoy.

FFSD informed Plaintiffs that due to a 2013 settlement agreement between FFSD and Dr. McCoy, the file is considered a "closed record" pursuant to Missouri Sunshine Law.  Mo. Rev. Stat. ch. 610 (the "Sunshine Law").  According to FFSD, paragraph 7 of that settlement agreement states:  "The District agrees that it will place the statement of charges and all documents amassed by the District in support of said charges in a sealed envelope only to be opened by order of a court pursuant to Chapter 610 of the Revised Statutes of Missouri."  Ex. 4. FFSD expressed concern that due to the settlement agreement with Dr. McCoy, FFSD may face liability should it produce the file.[3]  Consequently, FFSD will only produce the file upon order of the Court.

## Legal Standard

The Missouri Sunshine Law does not govern the discoverability of Dr. McCoy's personnel file in this federal action.  The Federal Rules of Civil Procedure, Federal Rules of Evidence, and federal common law privileges govern whether FFSD may withhold documents requested by Plaintiffs.  Under Federal Rule of Civil Procedure 26(b)(1),"[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . . [or] reasonably calculated to lead to the discovery of admissible evidence."  According to the 1974 Advisory Committee Notes to Federal Rule of Evidence 501, federal privileges are determined by "the principles of common law as interpreted by the courts of the United States in

---

(attached hereto as Ex. 2); Letter from Cindy Ormsby, counsel for Def. FFSD, to counsel for Pls. (Apr. 28, 2015) (attached hereto as Ex. 3); Email correspondence between parties (attached hereto as Ex. 4).

[3] The parties exchanged drafts of a proposed protective order, but FFSD determined that it could not produce the file, even with a protective order in place.  Plaintiffs' proposed protective order is attached hereto as Ex. 5.

3

the light of reason and experience." Thus, neither "[s]tatutory provisions providing for duties of confidentiality" nor state-law created privileges "automatically imply the creation of evidentiary privileges binding on [federal] courts." *Pearson v. Miller*, 211 F.3d 57, 68 (3d Cir. 2000) ("'Merely asserting that a . . . statute declares that the records in question are "confidential" does not make out a sufficient claim that the records are "privileged" within the meaning of Fed. R. Civ. P. 26(b)(1) and Fed. R. Evid. 501.'" (quoting *Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y. 1988)); *Evantigroup, LLC v. Mangia Mobile, LLC*, No. 4:11-CV-1328, 2013 WL 141605, at *1 (E.D. Mo. Jan. 11, 2013) (federal court may not recognize a Missouri-created accountant-client privilege which does not exist under federal law); *Lutzeier v. Citigroup Inc.*, No. 4:14CV183, 2015 WL 1853820, at *2 (E.D. Mo. Apr. 22, 2015) (ordering production of disciplinary and other documents in plaintiff's personnel file over plaintiff's claim of privilege based on a right of privacy claimed under Missouri law).

Relevancy, for purposes of Rule 26(b), is a broad concept and Rule 26(b) is construed liberally. Even when "there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court . . . become[s] involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action." *See* Fed. R. Civ. P. 26(b)(1), Advisory Committee's Note to 2000 Amendment. "The good-cause standard warranting broader discovery is meant to be flexible." *Id.* "The party opposing discovery has the burden to show that its objections are valid by providing explanation or factual support." *Hohn v. BNSF Ry. Co.*, No. 8:05CV552, 2007 WL 2572440, at *3 (D. Neb. May 10, 2007). In the voting rights context, relevance has been interpreted broadly. *See, e.g.*, *Janis v. Nelson*, No. CR. 09-5019, 2009 WL

4

5216898, at *5 (D.S.D. Dec. 30, 2009) (plaintiffs removed from voter list after felony conviction entitled to discovery as to state's general practices).

Personnel files and information related to employment in government positions is discoverable during litigation when the information is sufficiently related to the issues in the pleadings. *See Crowe*, 2013 WL 394184, at *4 ("Where the information requested in the personnel file is sufficiently related to the issues in the pleadings, it is discoverable."). Although highly sensitive and non-relevant personal information, such as social security numbers or medical history, may be redacted, an expectation of privacy in employment records does not prevent the discovery of relevant evidence. *See The Weitz Co.*, 2010 WL 4683723, at *6 ("While employees enjoy a modicum of privacy in their employment records, this expectation is not so strong that it can resist rules of discovery or evidence . . . . [T]he Missouri Supreme Court did not (then or ever) intimate that the privacy expectation was strong enough to prevent the discovery or admission of relevant evidence.") (interpreting *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W.3d 608 (Mo. 2007) (en banc)); *see also Lyoch v. Anheuser-Busch Cos.*, 164 F.R.D. 62, 68-69 (E.D. Mo. 1995) (ordering disclosure, subject to protective order, of plaintiff's supervisor's personnel file as relevant and likely to lead to the discovery of admissible evidence in an employment discrimination claim).

While federal common law governs the analysis of the discoverability of documents in this case, State courts' application of Sunshine Laws to the discovery process is instructive. Government records are presumptively open and available for public review. *See* Mo. Rev. Stat. § 610.011.2; *see e.g.*, *Oregon Cnty. R-IV Sch. Dist. v. LeMon*, 739 S.W.2d 553, 555-56 (Mo. Ct. App. 1987) (List of students' names, addresses, and telephone numbers was not protected from disclosure under Sunshine Law because "Chapter 610 opens to the public—even without an

5

interest to vindicate—the meetings and records of those entrusted with the public business.") (internal quotation marks and citation omitted). Section 610.021 of the Sunshine Law allows public governmental bodies to close meetings or documents, including personnel records, in twenty-three circumstances, "[e]xcept to the extent disclosure is otherwise required by law." *See* Mo. Rev. Stat. § 610.021.  However, a limitation on the general public's access to state documents pursuant to the Sunshine Law does not preclude disclosure of those documents during discovery by a party in litigation in state court. *See State v. Jackson*, 353 S.W.3d 657 (Mo. Ct. App. 2011) (A statutory limitation on the right of the general public to access governmental information pursuant to the Sunshine Law does not create a privilege that can be utilized to limit or defeat discovery in litigation.).  "Closed" documents are not presumptively privileged or excluded from discovery.  *See, e.g.*, *State ex rel. Jackson Cnty. Grand Jury v. Shinn*, 835 S.W.2d 347, 348 (Mo. Ct. App. 1992) (holding that a grand jury may subpoena personnel records closed to the public); *see generally* Robert L. Hess II, "Closed Records: Confidential, But Not Privileged From Discovery," 65 J. Mo. B. 180, 180 (July-Aug. 2009).  Whether or not state records are "public" or "closed," they can be, and often are, disclosed in litigation discovery.

## Argument

A.  *FFSD's justification for Dr. McCoy's suspension and other disciplinary measures is highly relevant to Plaintiffs' Complaint.*

Responsiveness to the particularized needs of the African-American community is one of the factors explicitly listed by the Supreme Court as relevant to the "totality of the circumstances" inquiry that courts undertake to analyze a claim under Section 2 of the Voting Rights Act.  *See Thornburg v. Gingles*, 478 U.S. 30, 37 (1986).  In pleadings, Plaintiffs identified Dr. McCoy's suspension and removal as directly related to the Eighth Senate Factor, namely that FFSD has not been responsive to the particularized needs of the African-American community.

6

*See* Complaint, Doc. No. 1, at ¶ 35.  A defendant board's actions or inactions towards its employees can be relevant to evaluating the Eighth Senate Factor.  *See e.g. Goosby v. Town Bd. of the Town of Hempstead, N.Y.*, 956 F. Supp. 326, 344-46 (E.D.N.Y. 1997).  Evidence of Dr. McCoy's actions taken as superintendent and of FFSD's justification for his suspension and his resignation on the eve of his dismissal are presumably contained in his personnel file, which can only be obtained from FFSD.

Dr. McCoy was not only the first-ever African-American superintendent for the District, but also strongly supported, among other issues, educational equity for African-American students in the District.  As a result, the Board's disciplinary actions towards Dr. McCoy resonated within the African-American community and, for many, exemplified the Board's non-responsiveness to African-American students and their educational needs.  Plaintiff Hudson, for instance, was a vocal supporter of Dr. McCoy as a parent to students in the FFSD, strenuously objected to the Board's suspension of Dr. McCoy, and found the Board's lack of transparency with FFSD residents and parents regarding its actions toward Dr. McCoy to be indicative of the non-responsiveness of the Board in general.  The treatment of Dr. McCoy, who was widely admired and respected by African-American residents of the District and parents of students in the District's public schools, in many ways exemplified the larger African-American community's frustration with its inability to access the Board and the Board's non-responsiveness to the community's needs.

FFSD implicitly acknowledges that Dr. McCoy's efforts may be relevant to the parties' claims or defenses by requesting, in interrogatories, evidence underlying Plaintiffs' perspective on Dr. McCoy's performance as superintendent.  *See, e.g.*, FFSD Defs.' 1st Set of Interrogs. to Pl. Hudson, Interrog. No. 7 (attached hereto as Ex. 6) ("Please describe and disclose all evidence

7

of the former Ferguson-Florissant School Superintendent's efforts at educational equity referred to in paragraph 35 of the Complaint.  Include any and all quantitative evidence of success in that arena.").  FFSD cannot exclude Plaintiffs from access to that same information, which it clearly finds relevant to Plaintiffs' claims or its defense.

B.     *Dr. McCoy's privacy will not be compromised as highly sensitive and non-relevant information may be redacted, and the parties can provide a proposed protective order to safeguard the privacy of the remainder of the file.*

FFSD can easily maintain Dr. McCoy's privacy by redacting non-relevant, highly sensitive information and agreeing to a protective order limiting disclosure of any information contained in Dr. McCoy's personnel file. Plaintiffs seek Dr. McCoy's employment information related to his performance as superintendent and the Board's actions taken towards him. Accordingly, highly sensitive personal information such as Dr. McCoy's social security number or any private medical information is not relevant, and such information can be properly redacted from his file before it is produced in litigation.

Any remaining privacy concerns can be addressed through a protective order.  Protective orders are regularly used to shield the confidentiality of personnel information.  *See, e.g.*, *Lyoch*, 164 F.R.D. at 68-69.  The Court may determine the scope of protection warranted to protect relevant sensitive information.  A protective order would adequately address any concerns with regard to Dr. McCoy's privacy.

## Conclusion

For the reasons set out above, Plaintiffs respectfully request that this Court issue an order compelling the production by FFSD of Dr. McCoy's full personnel file.  Information regarding Dr. McCoy's employment is highly relevant to Plaintiffs' Complaint and cannot be obtained from any other source.  The privacy of the record will not be compromised because highly sensitive non-relevant information may be appropriately redacted by Defendant's counsel and

8

the file can remain subject to a protective order.  Plaintiffs have shown good cause for compelling the production.  Thus, the motion should be granted.

Dated this 14th day of May, 2015.   Respectfully submitted,

/s/ Julie A. Ebenstein
JULIE A. EBENSTEIN*
DALE E. HO*
SOPHIA LIN LAKIN*
ACLU Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2686

ANTHONY E. ROTHERT, #44827MO
ANDREW J. MCNULTY, #67138MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, MO 63108
Phone: (314) 652-3114

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
3601 Main Street
Kansas City, MO 64111
Phone: (816) 470-9938

M. LAUGHLIN McDONALD*
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303
Phone: (404) 500-1235

* appearing pursuant to Local Rule 12.01(F)

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I, Julie A. Ebenstein, hereby certify that on May 14, 2015, I filed the foregoing Plaintiffs' Motion to Compel Production of Documents using the e-filing system, thereby serving electronic copies via email to all named parties below:

Darold E. Crotzer, Jr.
Crotzer and Ormsby, LLC
130 S. Bemiston Avenue, Suite 602
Clayton, MO 63105
Phone: (314) 726-3040
dcrotzer@crotzerormsby.com

Cindy Reeds Ormsby
Angela Bullock Gabel
Crotzer and Ormsby, LLC
130 S. Bemiston Avenue, Suite 602
Clayton, MO 63105
Phone: (314) 726-3040
cormsby@crotzerormsby.com
agabel@crotzerormsby.com

    Respectfully Submitted,

    /s/ Julie A. Ebenstein
    JULIE A. EBENSTEIN*
    ACLU Voting Rights Project
    125 Broad Street, 18th Floor
    New York, NY 10004
    Phone: (212) 549-2686

    *appearing pursuant to Local Rule 12.01(F)

    ATTORNEY FOR PLAINTIFFS