UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MISSOURI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Cause No. 4:14 CV 2077 RWS |
| FERGUSON-FLORISSANT SCHOOL DISTRICT, et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT FERGUSON-FLORISSANT SCHOOL DISTRICT'S**
**MOTION FOR SANCTIONS**

Defendant Ferguson-Florissant School District ("FFSD") requests that this Court impose monetary sanctions on Plaintiffs for engaging in witness tampering. In August 2015, FFSD's counsel spoke to a high-ranking official of the St. Louis County NAACP[1] over the telephone regarding this lawsuit. The County NAACP Official provided information and statements favorable to FFSD's defense. She agreed to testify as a fact witness. FFSD amended its Fed. R. Civ. P. 26(a)(1) disclosure to identify the County NAACP Official as a person who the FFSD may use to support its defenses. Within days, the chapter director for the national NAACP called the County NAACP Official and instructed her not to testify or otherwise participate in this litigation. After learning this, FFSD removed her from its disclosure under protest. To avoid placing her in a difficult and potentially jeopardizing position, FFSD will not be subpoenaing the County

---

[1] The St. Louis County NAACP is not a party to this case. To protect the official's identity, her name is not used in this motion. She is hereinafter referred to as the "official" or "County NAACP Official."

1

NAACP Official. However, FFSD is compelled to bring this troubling development to this Court's attention and request appropriate relief.

## Background

**I.    Underlying Facts**

The Missouri State Conference of the NAACP ("Missouri NAACP") and three individuals (collectively, with the Missouri NAACP, "Plaintiffs") filed this lawsuit under Section 2 of the Voting Rights. 52 U.S.C. § 10301. Plaintiffs allege that FFSD's method of electing its School Board members does not allow African-Americans an equal opportunity to elect their candidates of choice. Plaintiffs want this Court to divide FFSD into seven districts and require that each member be elected from a district. Currently, each representative is elected by all voters within the district, commonly referred to as an "at-large" election. Plaintiffs claim this method is unlawful even though African-Americans are more than half the total population within the district and, as FFSD will show later in this litigation, over half of the voting-age population.

Plaintiffs also allege that the Board has a "lack of responsiveness to the African-American community" and cite as an example the Board's suspension of FFSD's African-American superintendent in November 2013, who subsequently resigned. Doc No. 1 at pg. 10. Plaintiffs claim that the removal was racially motivated, even though the successor chosen by the Board in February 2015 is also African-American (Plaintiffs have not amended their complaint to reflect this fact).

In August 2015, FFSD's counsel spoke to a high-ranking official at the St. Louis County NAACP over the telephone. The official advised that the FFSD School Board had met with the St. Louis County NAACP in 2013 to assure that the superintendent's suspension was not racially motivated. The official is also a former school board member from a different district. She stated

that single-member district election systems are harmful to school districts because board members should represent the entire district. The County NAACP Official's support for at-large elections reflects a similar conclusion reached by Judge Kathleen O'Malley in *United States v. Euclid City Sch. Bd.*, 632 F. Supp. 2d 740 (N.D. Ohio 2009). In that case, Judge O'Malley "independently conclude[d]" that there were "legitimate, non-discriminatory justifications for the use of both at-large elections and staggered terms," including that at-large elections are

> important to school boards because the types of issues those boards address require district-wide support or accountability. For example, school boards must determine whether to close a particular school and how to obtain approval for tax-levies. Geographic partisanship would make such decisions far more difficult and, at times, even impossible. Indeed, use of at-large districts appears more important to school boards than other elected bodies, because unlike other political structures, school boards exist for the precise purpose of cultivating this consensus and shielding the provision of education from the clash of political conflict.

*Id.*, 632 F. Supp. 2d at 758-59 (internal quotation and citation omitted).

Given her favorable statements, FFSD's counsel asked whether the County NAACP Official would be willing to testify as a fact witness. The official agreed. FFSD amended its Fed. R. Civ. P. 26(a)(1) disclosure to include the official as an "individual likely to have discoverable information" that FFSD may use to support its defenses. The amended disclosure was served via email on Wednesday, August 26, 2015. Pursuant to the Federal Rules of Civil Procedure, the disclosure was provided to Plaintiffs' counsel but was not filed with this Court. Accordingly, the only other party in possession of the disclosure was Plaintiffs' counsel.

## II. Witness Tampering

On Saturday, August 29, the County NAACP Official received a telephone call from Reverend Gill Ford, the NAACP's National Director Unit Administration. The official was told that the Missouri NAACP takes "precedence" over the County NAACP. She was instructed not to agree to testify or to otherwise participate in this lawsuit.

3

That following Monday, the County NAACP Official called FFSD's counsel and advised them of the telephone call. FFSD's counsel subsequently sent an email to Plaintiffs' counsel conveying alarm and disappointment with the development. Plaintiffs' counsel was the only party that had been provided with the amended disclosure identifying the County NAACP Official. FFSD's counsel advised that it would remove the official from the disclosure under protest and would not subpoena her to avoid putting her in a potentially jeopardizing position. FFSD, however, reserved its right to consider other options to address the inappropriate situation. Plaintiffs' counsel did not respond to the email.

**Legal Standard**

This Court has inherent authority to impose sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *see also Bass v. General Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998) (a "district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power"). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (internal quotation omitted). "Over the years, the Supreme Court has found inherent authority to include the ability to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate for 'conduct which abuses the judicial process.'" *Harlan v. Lewis*, 982 F.3d 1255, 1259 (8th Cir. 1993) (quoting *Chambers*, 501 U.S. at 43-45).

Although witness tampering is a federal felony governed by 18 U.S.C. §§ 1503 and 1512, FFSD need not establish that Plaintiffs' conduct constituted a crime. *See Schultis v. Advanced Healthcare Mgmt. Servs., LLC*, No. 08-cv-83, 2011 U.S. Dist. LEXIS 87407, at *14 (E.D. Mo. Aug. 8, 2011) ("Although Dr. Schultis need not demonstrate AHCMS' actions rose to the level of

4

a federal felony, criminal standards provide some guidance."); *see also In re Brican Am. LLC Equip. Lease Litig.*, 977 F. Supp. 2d 1287, 1291-92 (S.D. Fla. 2013) ("The Court's authority to issue sanctions based upon [witness tampering] is not predicated upon a determination of criminal guilt . . . but instead upon the Court's inherent power.").

18 U.S.C. § 1503 prohibits "any threatening letter or communication" that "endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1512(b) makes it unlawful for any person to knowingly use or attempt to use "intimidation" to "influence, delay, or prevent the testimony of any person in an official proceeding" or to "withhold testimony . . . from an official proceeding." Further, Rule 3.4(f) of the Model Rules of Professional Conduct mandates that a lawyer "shall not . . . request a person other than a client to refrain from voluntarily giving relevant information to another party."

Sanctions, including monetary penalties and attorney fees, are an appropriate form of relief for witness tampering in a civil case. *Synergetics, Inc. v. Hurst*, 04-cv-318, 2007 U.S. Dist. LEXIS 61286, at *45 (E.D. Mo. Aug. 21, 2007) (noting the "extremely serious" nature of witness tampering an imposing more than $1,000,000 in monetary penalties); *see also Cleary Gottlieb Steen & Hamilton LLP v. Kensington Int'l Ltd.*, 284 F. App'x 826, 828 (2d Cir. 2008) (holding that district court did not abuse its discretion in granting sanctions in the sum of $165,000 which represented plaintiff's attorney fees in bringing the motion for sanctions, due to finding that opposing counsel had attempted to dissuade a non-party-witness from attending a deposition).

**Argument**

Witness tampering "strikes at the heart of the litigation process," which "relies on witnesses coming to court and telling the truth. Interference with the process taints trials and threatens the integrity of the justice system." *Synergetics*, 2007 U.S. Dist. LEXIS 61286 at *45 (citing *Harlan*,

982 F.2d at 1261). This is all the more true in a lawsuit under Section 2 of the Voting Rights Act, which requires "particular familiarity with the indigenous political reality." *Thornburg v. Gingles*, 478 U.S. 30, 79, 106 S. Ct. 2752, 98 L. Ed. 2d 25 (1986). Vote dilution claims call for a "searching practical evaluation of the 'past and present reality'" of the local jurisdiction and "necessarily depend upon widely varied proof and local circumstances."[2] Section 2 cases are, by nature, "fact-intensive." *Gingles*, 478 U.S. at 46.

Yet Plaintiffs' actions evince an effort to impede this inquiry by dissuading the County NAACP Official from testifying. Plaintiffs' counsel were the only party in possession of the amended disclosure that identified the official. The disclosure was not filed online and therefore not publicly available through the Public Access to Court Electronic Records ("PACER") system. Four days after the amended disclosure was served, Rev. Gill of the national NAACP office contacted the official and instructed her not to testify. The chain of events cannot be coincidental. *See Cotto v. Herbert*, 331 F.3d 217, 235 (2d Cir. 2003) (indirect or circumstantial evidence may suffice to establish witness tampering).

Additionally, there is no legal basis to prevent the County NAACP Official from testifying. Rev. Gill advised the official that the Missouri NAACP took "precedence" over the County NAACP. Whatever the hierarchy of various chapters may be, this is not a valid basis to preclude the official's involvement in this case. The Missouri NAACP and the County NAACP are separate entities, as established by the fact that Plaintiffs' counsel have not complained that FFSD's conversation with the official constituted *ex parte* communication with their clients or agents of their clients.

---

[2] S. Rep. No. 97-417, at 30-31 (1982), *reprinted in* 1982 U.S.C.A.A.N. 177.

6

With Plaintiffs' prompting, the national NAACP office wielded its clout over a local official and subdued her into not testifying. That Plaintiffs may not have directly communicated with the official does not excuse the conduct. 18 U.S.C. § 1512(b) does not require actual communication between the witness and the party attempting to influence the witness; it merely requires a form of "intimidation," which took the form in this case of the thinly-veiled "precedence" comment. *See United States v. Tocco*, 135 F.3d 116 (2d Cir. 1998) (sustaining conviction of witness tampering based on evidence that defendant intimidated a witness by exerting a "strong influence" over her).

Plaintiffs' conduct is all the more alarming given the substance of the County NAACP Official's statements. Her testimony would have undermined Plaintiffs' speculative accusation that the FFSD School Board's suspension of the superintendent in 2013 was racially motivated. As a former school board member, her testimony on the harmful effects of single-member districts would have bolstered FFSD's defense that the existing election system has legitimate, nondiscriminatory justifications.

Further, the repercussions of Plaintiffs' behavior are potentially irreversible: Even if the County NAACP Official were compelled to testify, she may make the understandable and self-preserving decision to temper or withhold her statements to avoid consequences from those who have "precedence" above her. FFSD invested substantial resources into litigating the issue of the former superintendent's suspension, including motions practice regarding his personnel file. The County NAACP Official would have testified on issues central to this litigation, which makes the inappropriate conduct especially damaging. Accordingly, FFSD requests that this Court exercise its inherent authority and prohibit Plaintiffs (1) from arguing that the former superintendent's suspension was racially motivated and (2) from presenting evidence regarding purported reasons

7

for using single-member district systems for school boards.  FFSD is unable to fully litigating these issues because the County NAACP Official has been compromised.  Plaintiffs should not gain any advantage from this.  *Cf. Riley v. City of New York*, 10-cv-2513, 2015 U.S. Dist. LEXIS 16025 (E.D.N.Y. Feb. 10, 2015) (evidentiary sanctions, including adverse inference jury instructions, appropriate response to witness tampering).

At least one court has imposed sanctions on a party who transmitted a witness's deposition transcript to the witness's employer with the "expectation" that the employer would "lean on" the witness to "cease cooperating" with the opposing party.  *Mass. Inst. of Tech. v. ImClone Sys.*, 490 F. Supp. 2d 119, 127 (D. Mass. 2007).  This case presents the same situation, with the facts changed only slightly:  Plaintiffs transmitted FFSD's amended disclosure to the national office of the NAACP, and the only likely outcome would be that the national office would "lean on" the local official to "cease cooperating" with the FFSD.  This conduct is "a serious interference with the justice system that the court must not ignore."  *Synergetics*, 2007 U.S. Dist. LEXIS 61286, at *3.

## Conclusion

For the reasons above, FFSD respectfully requests that this Court impose appropriate sanctions on Plaintiffs including, but not limited to, monetary penalties and attorney fees incurred in preparing this motion and memorandum, as well as prohibiting Plaintiffs from litigating the motivations of the former superintendent's suspension and the supposed justifications for single-member district elections for school boards.

Respectfully submitted,

FLOYD, PFLUEGER & RINGER, P.S.

s/ John A. Safarli
John A. Safarli, *pro hac vice*
200 W. Thomas St., Ste. 500
Seattle, WA 98119
(206) 441-4455
(206) 441-8484 (fax)
jsafarli@floyd-ringer.com


CROTZER & ORMSBY, LLC

Cindy Reeds Ormsby, #50986
Angela Gabel, #58227
130 S. Bemiston, Ste. 602
Clayton, MO 63105
(314) 726-3040
(314) 726-5120 (fax)
cormsby@crotzerormsby.com
agabel@crotzerormsby.com


*Attorneys for Defendant Ferguson-Florissant School District*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is a person of such age and discretion as to be competent to serve papers. It is further certified that on September 4, 2015, the undersigned electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

Anthony E. Rothert
Andrew J. McNulty
Jessie M. Steffan
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, MO 63108
Phone: 314-652-3114
Fax: 314-652-3112
trothert@aclu-mo.org
andrew.joseph.mcnulty@gmail.com
jsteffan@aclu-mo.org
*Counsel for Plaintiffs*

Dale Ho
Julie A. Ebenstein
Sophia Lin Lakin
ACLU Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-549-2686
dale.ho@aclu.org
jebenstein@aclu.org
slakin@aclu.org
*Counsel for Plaintiffs*

M. Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303
Phone: 404-500-1235
lmcdonald@aclu.org
*Counsel for Plaintiffs*

Gillian R. Wilcox
ACLU of Missouri
3601 Main St.
Kansas City, MO 64111
gwilcox@aclu-mo.org
*Counsel for Plaintiffs*

    Dated this 4th day of September, 2015.

                                      s/ John A. Safarli
                                      John A. Safarli, *pro hac vice*