UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

MISSOURI STATE CONFERENCE OF )
THE NATIONAL ASSOCIATION FOR )
THE ADVANCEMENT OF COLORED )
PEOPLE, REDDITT HUDSON, )
F. WILLIS JOHNSON and )
DORIS BAILEY, )
                                                       )     Civ. No. 4:14-cv-02077-RWS
                Plaintiffs, )
                                                       )
v. )
                                                       )
FERGUSON-FLORISSANT SCHOOL )
DISTRICT and ST. LOUIS COUNTY )
BOARD OF ELECTIONS )
COMMISSIONERS, )
                Defendants. )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SANCTIONS**

Plaintiffs the Missouri State Conference of the NAACP (the "Missouri NAACP"), Redditt Hudson, F. Willis Johnson, and Doris Bailey (collectively, "Plaintiffs") respectfully submit this memorandum in opposition to the motion for sanctions filed by Defendant Ferguson-Florissant School District ("Defendant").

## INTRODUCTION

This dispute arises out of Defendant's disclosure – nine days before the close of discovery – that it intended to rely on the testimony of a "high-ranking" officer of the St. Louis County NAACP (the "NAACP officer"). Mem. in Supp. of Def. FFSD's Mot. for Sanctions, ECF No. 57 ("Def.'s Br."), at 1. Prior to that disclosure, Defense counsel had communicated with the NAACP officer about the substance of this litigation without the consent of Plaintiffs' counsel. After the National Association for the Advancement of Colored People (the "National NAACP") apparently reminded the NAACP officer of the NAACP's corporate structure – *i.e.*, that the St. Louis County NAACP is a member organization of the Plaintiff Missouri NAACP subject to its activities and policies, and that, as an officer of the St. Louis County NAACP, she should not testify in this litigation absent a subpoena – Defendant withdrew the NAACP officer as a witness rather than simply issue a subpoena. Now, Defendant has moved for sanctions.

Defendant's motion should be denied for several reasons. *First*, this discovery-related motion is procedurally improper, as Defendant failed to comply with its mandatory meet-and-confer obligations under Local Rule 3.04(A). *Second*, neither Plaintiffs nor their counsel encouraged the National NAACP to take any action with respect to the NAACP officer, let alone any improper action. The NAACP officer herself was recently quoted in the media stating that she was not pressured against testifying, stating, "[n]o, it wasn't pressure. I am never pressured by anybody." Ex. 1, Robert Patrick, "Lawyers allege NAACP witness tampering in Ferguson-

1

Florissant school board election suit," *St. Louis Post-Dispatch*, Sept. 8, 2015.[1] At most, it appears that she was reminded of the legal relationship between the local NAACP units and the larger state and national organizations, which hardly amounts to "witness tampering." *Third*, Defendant has not demonstrated that it has been prejudiced in any respect: this entire dispute could have been avoided with a simple subpoena, and, in any event, Defendant has not identified any testimony that it cannot easily adduce from other sources. The motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs bring this action challenging at-large elections for the Ferguson-Florissant School District as unlawfully diluting the voting rights of African Americans in violation of Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301. Plaintiff Missouri NAACP is "a constituent and subordinate unit" of and chartered by the National NAACP, NAACP Bylaws, Art. I, § 2(a), *available at* http://tinyurl.com/q47hjv9, the nation's oldest and largest civil rights organization. *See* Ex. 2, Pruitt Decl. ¶ 3. As a state NAACP affiliate, the Missouri NAACP is "subject to the general authority and jurisdiction" of the National NAACP Board, NAACP Bylaws, Art. I, § 2(a), and often receives counsel on corporate governance matters from the National NAACP office, *see* Ex. 2, Pruitt Decl. ¶ 8. The Missouri NAACP is a membership organization; its membership consists of all local NAACP units "located within the geographic boundaries" of Missouri. *See* NAACP Bylaws, Art. I, § 2(d). This includes the St. Louis County NAACP. *See id.* Members of the Missouri NAACP, including the St. Louis County NAACP, are separate entities chartered by the National NAACP, "subject" to the Missouri NAACP's "efforts to coordinate NAACP activities and policies within its jurisdiction." *Id.*

---

[1] Consistent with Defendant's practice, Plaintiffs have redacted the NAACP officer's name from all exhibits, despite the fact that she is identified by name in media reports.

Discovery in this matter commenced on March 6, 2015. *See* Case Mgmt. Order, ECF No. 21. For more than six months, Defendant did not disclose the identity of a *single* witness likely to have discoverable information. *See* Ex. 3, Def. FFSD's Rule 26(a)(1) Initial Disclosures (Feb. 19, 2015). According to Defendant, on an unspecified date "[i]n August 2015," Defense counsel "spoke to a high-ranking official of the St. Louis County NAACP over the telephone regarding this lawsuit" and the possibility of her serving as a fact witness for Defendant in this action. Def.'s Br. at 1 (footnote omitted). Defendant spoke with this "high-ranking" NAACP officer about the subject of this litigation without the knowledge or consent of Plaintiffs' counsel.

Then, on August 26, 2015, just nine days before the close of discovery, Defendant served amended initial disclosures that, for the first time, identified several individuals likely to have discoverable information, including: (1) eight past and current School Board members, whom Plaintiffs had already deposed; and (2) two individuals previously unknown to Plaintiffs as potential witnesses: Frank Green, the former President of the Ferguson-Florissant National Education Association (FFNEA), and the NAACP officer in question. *See* Def.'s Ex. A, ECF No. 58-1. Defendant's amended disclosures indicated that the NAACP officer was likely to have discoverable information about the School Board's "handling of former superintendent issue," relevant to the "responsiveness of [the] school board." *Id.* Of the other nine individuals identified in Defendant's disclosures, eight were similarly identified as likely to have discoverable information concerning the School Board's "handling of former superintendent issue." *Id.* Given the last-minute disclosure of a new witness who is an NAACP officer, Plaintiffs' counsel notified the Plaintiff Missouri NAACP and the National NAACP. *See* Ex. 4, Rothert Decl. ¶ 6; Ex. 5, Ho Decl. ¶ 8. Specifically, Plaintiffs' counsel asked if the Missouri NAACP had any knowledge about this NAACP officer, *see* Ex. 4, Rothert Decl. ¶ 8; sought the

advice of the General Counsel's office of the National NAACP concerning this possible corporate governance issue; and offered to schedule a conversation to discuss it. No such conversation occurred. *See* Ex. 5, Ho Decl. ¶¶ 8, 10-11. Neither Plaintiffs nor Plaintiffs' counsel directed, requested, or encouraged anyone to contact the NAACP officer, to dissuade her from testifying without a subpoena, or to engage in any improper conduct. *See* Ex. 2, Pruitt Decl. ¶ 10-11; Ex. 4, Rothert Decl. ¶ 7; Ex. 5, Ho Decl. ¶ 9.

Plaintiffs' counsel shortly thereafter contacted Defense counsel to schedule depositions of the two previously-undisclosed witnesses, and agreed to conduct a deposition of the NAACP officer on September 2, 2015. *See* Def.'s Ex. B at 4, ECF No. 58-2, Email from Ebenstein to Ormsby (Aug. 27, 2015); *id.* at 2-3, Email from Ormsby to Ebenstein (Aug. 28, 2015). Then, on August 31, just two days before the deposition, Defense counsel canceled it. *See id.* at 1, Email from Ormsby to Ebenstein (Aug. 31, 2015). According to Defense counsel, the NAACP officer had advised her that the NAACP officer could not "be involved in any way in the lawsuit – including being deposed or providing testimony – absent a subpoena." *Id.* Defense counsel stated that she was "not going to subpoena" the NAACP officer and that she was "considering [her] options outside of subpoenaing" her. *Id.* Defense counsel did not offer to meet-and-confer about this issue in person or via telephone. Despite submitting no evidence that Plaintiffs or their counsel encouraged anyone to take any action with respect to the NAACP officer in question, Defendant has now filed a motion seeking sanctions, alleging that Plaintiffs and/or their counsel engaged in "witness tampering." Def.'s. Br. at 1.

**ARGUMENT**

I. **DEFENDANT'S MOTION SHOULD BE DENIED FOR FAILURE TO COMPLY WITH ITS MEET-AND-CONFER OBLIGATIONS UNDER LOCAL RULE 3.04(A)**

Local Rule 3.04(A) provides that "[t]he Court will not consider any motion relating to discovery and disclosure unless it contains a statement that movant's counsel has conferred in person or by telephone with the opposing counsel in good faith or has made reasonable efforts to do so, but that after sincere efforts to resolve their dispute, counsel are unable to reach an accord." "The local rules of a district court have the force of law, and the parties are charged with knowledge of the local rules the same as with knowledge of the Federal Rules of Civil Procedure and all federal law." *Myles v. Dierberg's Mkts., Inc.*, No. 4:09-CV-573 CAS, 2009 WL 4042120, at *1 (E.D. Mo. Nov. 19, 2009) (citing *Jetton v. McDonnell Douglas*, 121 F.3d 423, 426 (8th Cir. 1997)).

Thus, this Court routinely denies discovery-related motions – including motions for sanctions related to alleged discovery-related improprieties – where the moving party fails to comply with its meet-and-confer obligations. *See, e.g.*, *Clemons v. Lombardi*, No. 4:13-CV-458 CDP, 2014 WL 409107, at *1 (E.D. Mo. Feb. 3, 2014) (denying motion for discovery-related sanctions where moving party "did not comply with the requirements that parties confer and attempt to resolve discovery disputes before filing motions"); *Hawkeye-Sec. Ins. Co. v. Bunch*, No. 4:08-CV-1071 ERW, 2009 WL 4430860, at *3 (E.D. Mo. Nov. 25, 2009) (same). A court may "deny [a motion for discovery-related sanctions] on that basis alone." *United States v. Findett Corp.*, 75 F. Supp. 2d 982, 994-95 (E.D. Mo. 1999), *aff'd*, 220 F.3d 842 (8th Cir. 2000).

Here, Defendant made no effort or request to confer with Plaintiffs to resolve this dispute. Rather, Defense counsel sent an email stating that she was "considering [her] options outside of subpoenaing" the NAACP officer, without suggesting a further conversation or any proposal for resolving the dispute. Def.'s Ex. B at 1, ECF No. 58-2. And, even if a vague statement about "considering . . . options" could somehow be construed as a good-faith attempt to resolve this discovery dispute, Defense counsel's email is insufficient to satisfy the requirements of Local Rule 3.04(A), which require a live conference in person or *via telephone*. *See, e.g.*, *Myles*, 2009 WL 4042120, at *1 ("A letter is insufficient to comply with Local Rule 3.04(a), which requires a conference to occur in person or by telephone."); *Beck v. J.W. Bommarito Constr.*, No. 4:08-CV-571 HEA, 2008 WL 2699816, at *1 (E.D. Mo. July 2, 2008) ("[A] letter to counsel for Plaintiff . . . does not satisfy the Local Rule."); *Cotton v. AT & T Operations, Inc.*, No. 4:06-CV-438 CAS, 2006 WL 4556031, at *1 (E.D. Mo. Sept. 6, 2006) ("The sending of correspondence concerning discovery is insufficient to constitute a good faith attempt to resolve the dispute under the local rule."). Accordingly, this discovery-related motion should be denied for failure to comply with Local Rule 3.04(A).[2]

---

[2] Plaintiffs previously opposed a discovery motion by the District for failing to comply with Local Rule 3.04(A). *See* Pls.' Opp'n to Def.'s Mot. to Amend CMO at 5 n.3, ECF No. 28. While preparing this motion for sanctions, Defense counsel separately contacted Plaintiffs' counsel to request an extension of time to file Defendant's motion for summary judgment because, according to Defense counsel, "there is [sic] just the two of us working on this matter." Ex. 6, Email from Ormsby to Ebenstein (Sept. 2, 2015), at 1. Plaintiffs consented to that motion. Def.'s Consent Mot. to Extend Scheduling Order Deadlines, ECF No. 61. Leaving aside Defense counsel's misrepresentation that Defendant is represented by "just . . . two" attorneys, *see* ECF Nos. 6 (FFSD Answer by Ormsby), 19 (Gabel Appearance), 39 & 40 (Safarli *pro hac vice* Motion & Order), it is surprising that, while requesting that extension from Plaintiffs, Defendant did not mention this dispute.

## II. PLAINTIFFS DID NOT ENGAGE IN AN IMPROPER EFFORT TO DISCOURAGE THE NAACP OFFICER FROM TESTIFYING

If Defense counsel had attempted to meet and confer, she would have learned that the assumptions on which this motion is based are factually inaccurate. To be perfectly clear, neither the Plaintiffs nor their counsel directed, requested, or encouraged anyone to communicate with the NAACP officer, discourage her from testifying absent a subpoena, or engage in any improper behavior. *See* Ex. 2, Pruitt Decl. ¶¶ 10-11; Ex. 4, Rothert Decl. ¶ 7; Ex. 5, Ho Decl. ¶ 9. Upon learning that Defendant intended to rely on the testimony of an officer of the St. Louis County NAACP in this case, Plaintiffs' counsel communicated that fact to their client, the Missouri NAACP. *See* Ex. 4, Rothert Decl. ¶ 6. That step – notifying the client of a new potential witness who is also closely affiliated with the Plaintiff itself – was required by counsel's duty of diligent representation. Missouri Rule of Professional Conduct 4-1.4(a)(1) requires that a lawyer shall "keep the client reasonably informed about the status of the matter." Subsection (b) of that rule further requires that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Informing the Missouri NAACP was particularly appropriate given the possible implications for corporate governance. Plaintiff Missouri NAACP is a membership organization whose members are local NAACP branches including the St. Louis County NAACP. *See* NAACP Bylaws, Art. I, § 2(d), *available at* http://tinyurl.com/q47hjv9. Local NAACP branches in the state of Missouri are "subject" to the Missouri NAACP's "efforts to coordinate NAACP activities and policies within its jurisdiction." *Id.* Given that the NAACP officer is a "high-ranking" officer of the St. Louis County NAACP, Def.'s Br. at 1, she potentially has authority to legally bind a member of Missouri NAACP. *See Teasdale & Assocs. v. Richmond Heights*

*Church of God in Christ*, 373 S.W.3d 17, 22 (Mo. Ct. App. 2012) (whether an officer of a nonprofit corporation is an agent "is a mixed question of fact and law that is highly dependent upon the trial court's credibility determinations and assessment of the evidence"). The Missouri Bar has acknowledged that a lawyer has a "duty to take reasonable steps to protect the client's interests, even in a limited representation, [with regard to matters] for which the lawyer has not taken responsibility." Supreme Court of Missouri and Missouri Bar Association Joint Commission to Review Pro Se Litigation, Report of the Special Committee on Limited Scope Representation at 13, *available at* http://tinyurl.com/otmmjm7.

Plaintiff Missouri NAACP then notified the National NAACP that an officer of the St. Louis NAACP may be testifying in this litigation, but made no request that any action be taken. *See* Ex. 2, Pruitt Decl. ¶ 9. The Missouri NAACP did not contact the St. Louis County NAACP officer directly. *Id.* ¶ 11. Around the same time, Plaintiffs' counsel separately notified the General Counsel's office of the National NAACP, requested advice, and offered to have a conversation about the matter, but no such conversation ensued. *See* Ex. 5, Ho Decl. ¶¶ 8, 10-12. This notice was consistent with counsel's duty of diligent representation: the Missouri NAACP and the St. Louis County NAACP each are chartered by the National NAACP and are "constituent and subordinate unit[s]" of the National NAACP, *see* NAACP Bylaws, Art. I, § 2(a); both are "subject to the general authority and jurisdiction" of the National NAACP Board of Directors, *id.*; and the National NAACP often provides counsel to the Missouri NAACP concerning corporate governance matters, *see* Ex. 2, Pruitt Decl. ¶ 8. Given the limited scope of counsel's representation of the Missouri NAACP, which is restricted strictly to this litigation, *see* Ex. 5, Ho Decl. ¶¶ 3-4; Ex. 4, Rothert Decl. ¶ 2, it was entirely appropriate to refer this corporate

governance issue, which raised potential legal questions about the implications of the NAACP's organizational structure, to the National NAACP General Counsel's office.

Defendant offers no evidence that Plaintiffs engaged in improper conduct. Local Rule 4.01(A) provides that "[i]f the motion requires consideration of facts not appearing in the record, the party also shall file all documentary evidence relied upon." The only "evidence" submitted by Defendant is a declaration from its counsel Ms. Ormsby, which does not even suggest that Plaintiffs or their counsel had any hand in purportedly advising the NAACP officer not testify, let alone that they engaged in improper conduct. *See* Ormsby Decl., ECF No. 58. No additional details are offered beyond innuendo and speculation in Defendant's *brief*, which are not evidence.[3] Such unsubstantiated assumptions are not a sufficient basis for sanctions. *Cf. Gray v. City of Valley Park*, No. 4:07-CV-881 ERW, 2008 WL 294294, at *3 (E.D. Mo. Jan. 31, 2008) ("The Court is unwilling to impose sanctions upon the Defendant on the basis of an assumption."), *aff'd*, 567 F.3d 976 (8th Cir. 2009); *Ladd v. City of St. Louis*, No. 4:10-CV-2219 AGF, 2012 WL 1110110, at *3 n.2 (E.D. Mo. Mar. 31, 2012) (noting denial of sanctions where there was "no evidence" of misconduct other than the movant's "speculation"); *McCarthy v. Webster Univ.*, No. 4:11-CV-1614 CAS, 2013 WL 136466, at *6 (E.D. Mo. Jan. 10, 2013) (where party moved for sanctions based on unsupported allegations of misrepresentations by opposing counsel, denying the motion as "entirely without merit and bordering on frivolous").

---

[3] *See, e.g.,* Def.'s Br. at 3 (asserting, without any citations to evidence, that the NAACP officer was told by "Reverend Gill Ford" of the National NAACP "that the Missouri NAACP takes 'precedence' over the County NAACP"); *id.* at 6 (asserting, without any evidence whatsoever, that "Plaintiffs' actions evince an effort to impede this inquiry by dissuading the County NAACP Official from testifying"). These characterizations are not based on any documentary evidence in the record and therefore are not properly before the Court, and should not be considered on this motion. *Cf. In re Brican Am. LLC Equip. Lease Litig.*, 977 F. Supp. 2d 1287, 1297 (S.D. Fla. 2013) (observing that, "[i]n most cases, witness tampering is established by the testimony of an individual who has actually been threatened, intimidated, or bribed by an accused" and denying sanctions where movants "offered no such evidence of witness tampering").

9

Moreover, the NAACP officer herself recently stated publicly that she was not pressured against testifying, stating, "[n]o, it wasn't pressure. I am never pressured by anybody." Ex. 1, *St. Louis Post-Dispatch*, Sept. 8, 2015. And, even taking Defendant's assertions in its brief at face value, they do not establish any improper influence over the NAACP officer. The fact that the NAACP officer was supposedly "told not to testify," Ormsby Decl. ¶ 5, ECF No. 58, "absent a subpoena," Def.'s Ex. B at 1, ECF No. 58-2 – without any description of the basis for that advice – certainly does not establish that anyone "knowingly use[d] intimidation, threaten[ed], or corruptly persuade[d]" the NAACP officer not to testify. 18 U.S.C. § 1512(b).[4] Defendant cites Rule 3.4(f) of the Model Rules of Professional Conduct, which provides that a lawyer "shall not . . . request a person other than a client to refrain from voluntarily giving relevant information to another party."[5] Def.'s Br. at 5. But Defendant omits the critical subsections: "*unless*: (1) *the person is a relative or an employee or other agent of a client*; and (2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information." Model Rules of Prof'l Conduct R. 3.4(f) (emphasis added). Given the close affiliate relationships among the local, state, and national NAACP entities, any advice to the NAACP officer not to testify absent a subpoena would be entirely consistent with Rule 3.4(f)(1).

The cases cited by Defendant are inapposite. Several of the cases involved bribery and/or false statements, and nothing remotely of the sort has been alleged here. *See, e.g.*, *Synergetics,*

---

[4] "'[K]nowledge' and 'knowingly' are normally associated with awareness, understanding, or consciousness. 'Corrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil. Joining these meanings together here makes sense both linguistically and in the statutory scheme. Only persons conscious of wrongdoing can be said to 'knowingly . . . corruptly persuad[e].'" *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005) (citations omitted). There is no evidence of any such scienter here.

[5] Rule 3.4(f) of the Model Rules of Professional Conduct is identical to Rule 4-3.4(f) of the Missouri Rules of Professional Conduct, which are codified as Rule 4 of the Missouri Supreme Court Rules.

*Inc. v. Hurst*, No. 4:04-CV-318 CDP, 2007 WL 2422871, at *1 (E.D. Mo. Aug. 21, 2007) (non-movant had "wrongfully conditioned the settlement of a separate lawsuit" against a witness based on witness's "agreement not to testify"); *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998) (defendant made a "$500 cash payment" to retain an attorney for witness); *Riley v. City of New York*, No. 10-CV-2513 MKB, 2015 WL 541346, at *9 (E.D.N.Y. Feb. 10, 2015) (non-movant induced a witness to offer a demonstrably "false" statement). In another case, "the attorneys in question had acted in bad faith and without legal justification on both the content of their statements and the demeanor they exhibited." *Cleary Gottlieb Steen & Hamilton LLP v. Kensington Int'l Ltd.*, 284 F. App'x 826, 828 (2d Cir. 2008). Nothing of the sort happened here. And *Massachusetts Institute of Technology v. ImClone Systems, Inc.* involved a request to "rein [the witness] in," 490 F. Supp. 2d 119, 126 (D. Mass. 2007), which did not occur here. Moreover, *M.I.T.* did not involve a witness who, as is the case here, is closely related to and arguably an agent of the Plaintiff.

Ultimately, Plaintiffs and their counsel took the most prudent course of action by informing the National NAACP of a possible corporate governance issue. But when it was advantageous to the Defendant, Defense counsel did not exercise a similar level of caution. Missouri Supreme Court Rule 4-4.2 provides,

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Given the complex legal relationships between the various NAACP entities, it would have been prudent for Defendant to inform Plaintiffs' counsel before – or even contemporaneous to – contacting "a high-ranking official of the St. Louis County NAACP." Def.'s Br. at 1. But there is no dispute that Defense counsel engaged in those conversations without notice to or consent

11

by Plaintiffs' counsel. Given the corporate relationships among the local, state, and national NAACP, and the "high-ranking" position of the NAACP officer, Defense counsel's unauthorized communications with her about the subject of this litigation arguably run afoul of Missouri Supreme Court Rule 4-4.2.[6] It is the height of chutzpah that, after engaging in *ex parte* communications with an officer of a Missouri NAACP member organization, disclosing the new witness just nine days before the end of discovery, and then withdrawing that witness just two days before her deposition rather than subpoenaing her, Defendant would attempt to intimidate the Missouri NAACP by seeking monetary sanctions against it.

### III. SANCTIONS ARE INAPPROPRIATE BECAUSE DEFENDANT HAS NOT BEEN PREJUDICED

Even if Defendant had established any improper conduct – and it has not – sanctions would still be inappropriate because Defendant has not been prejudiced in any way. As Defendant's own motion indicates, it remained free to subpoena the NAACP officer's testimony prior to the close of discovery, which is precisely how Plaintiffs adduced testimony from members of the Defendant School Board. That Defendant opted not to exercise that option hardly amounts to prejudice. *See Gallagher v. Magner*, 619 F.3d 823, 844 (8th Cir. 2010) (affirming magistrate's conclusion that movant who "chose not to subpoena" evidence did not suffer any prejudice, and that "'[s]uch a failure to pursue discovery is incongruent with

---

[6] Communications with a "high-ranking" officer of a corporate entity fall within Missouri Supreme Court Rule 4-4.2. *See State ex rel. Atchison, Topeka & Santa Fe R.R. v. O'Malley*, 888 S.W.2d 760, 762 (Mo. Ct. App. 1994) (in the case of corporate entities, Missouri Supreme Court Rule 4-4 applies to "(1) persons having managerial responsibility; (2) persons whose acts or omissions may be imputed to the corporation; and (3) persons whose statements may constitute admissions by the corporation") (citing *State ex rel. Pitts v. Roberts*, 857 S.W.2d 200, 202 (Mo. 1993) (en banc)); Missouri Supreme Court Rule 4-4.2, Comment 7 ("In the case of a represented organization, Rule 4-4.2 prohibits communications with a constituent of the organization who . . . has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.").

12

[movant's] claim of prejudice"); *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 903 (8th Cir. 2009) (in evaluating prejudice, court looks to whether an allegedly harmed party took other available means to obtain the requested information).

Moreover, according to Defendant's disclosures, Defendant planned on offering the NAACP officer's testimony with respect to the "board['s] handling of former superintendent issue" and the "responsiveness of school board." Def.'s Ex. A, ECF No. 58-1. Defendant's brief offers some additional detail, stating that the NAACP officer told Defense counsel "that the FFSD School Board had met with the St. Louis County NAACP in 2013 to assure that the superintendent's suspension was not racially motivated." Def.'s Br. at 2. But Defendant offers no reason why that information – which, contrary to Defendant's assertions, is far from "central to this litigation," Def.'s Br. at 7[7] – cannot be adduced from members of the School Board itself who "met" with the St. Louis County NAACP. Indeed, Defendant's disclosures identify an additional eight witnesses who will apparently testify concerning the "board['s] handling of former superintendent issue." Def.'s Ex. A, ECF No. 58-1. And, notably, Defendant fails to

---

[7] The School Board's failure to transparently explain its dismissal of the District's first African-American superintendent is relevant to this case, but it is hardly a "central" issue. As in all Section 2 vote dilution cases, the "central" issue in this litigation is whether Plaintiffs can establish the three *Gingles* preconditions, namely: (1) whether the minority group is "sufficiently large and geographically compact to constitute a majority in a single-member district"; (2) whether the minority group is "politically cohesive"; and (3) whether the majority votes "sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidates." *Thornburg v. Gingles*, 478 U.S. 30, 50-51 (1986). It would be an "unusual case in which the plaintiffs can establish the existence of the three *Gingles* factors but still have failed to establish a violation of [Section] 2 under the totality of the circumstances." *Teague v. Attala Cnty.*, 92 F.3d 283, 293 (5th Cir. 1996) (quoting *Clark v. Calhoun Cnty.*, 21 F.3d 92, 97 (5th Cir. 1994)). To be sure, under Section 2's "totality of the circumstances" inquiry, Plaintiffs must prove additional factors beyond the *Gingles* preconditions in order to establish liability, but as the Eighth Circuit has explained, "[t]wo factors predominate the totality-of-circumstances analysis: 'the extent to which voting is racially polarized and the extent to which minorities have been elected under the challenged scheme.'" *Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1022 (8th Cir. 2006) (quoting *Harvell v. Blytheville School Dist. No. 5*, 71 F.3d 1382, 1390 (8th Cir. 1995)).

mention that the St. Louis County NAACP and the NAACP officer issued public statements criticizing the Ferguson-Florissant School Board over its dispute with the superintendent. *See* Ex. 7, St. Louis County NAACP Press Release, "County NAACP Investigating Why Ferg Flor Supt. Suspended," Nov. 8, 2013 (NAACP officer in question stating that it "is not okay [that] the board has not shared with its stakeholders the reasons for placing Dr. McCoy on administrative leave"); Ex. 8, Tracy Clemons, "Crowd Expected at Ferguson-Florissant Meeting," KSDK NewsChannel 5, Nov. 13, 2013 (NAACP officer expressing the "hope" that the School Board "will rescind everything and give [Superintendent McCoy] another chance to work").

Although not identified in Defendant's disclosures, Defendant's brief asserts an additional topic on which the NAACP officer purportedly would have testified, namely, whether "single-member district election systems are harmful to school districts because board members should represent the entire district." Def.'s Br. at 2-3. As an initial matter, this abstract question is not identified in Defendant's disclosures, and, even if the NAACP officer were to testify, Defendant would be barred from adducing testimony from her on this subject due to their failure to disclose it. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring parties to disclose "the name . . . of each individual likely to have discoverable information—*along with the subjects of that information*—that the disclosing party may use to support its claims or defenses") (emphasis added).

In any event, the only basis offered by Defendant as to why the NAACP officer would have knowledge of this subject is that she is a former member of a *different* school board. *See* Def.'s Br. at 7 ("*As a former school board member*, her testimony on the harmful effects of single-member districts would have bolstered FFSD's defense . . . .") (emphasis added).

14

Defendant offers no reason that the supposedly adverse effects of single-member districts[8] – which, at best, is relevant to the remedy stage of this case but not to liability[9] – cannot be adduced from any of the current and former members of the FFSD Board whom they have already identified as witnesses.

This is clearly not a situation in which a party was "depriv[ed] . . . of the cooperation of [a] witness" with critical information with which the witness in question was most familiar. *M.I.T.*, 490 F. Supp. 2d at 127. Under these circumstances, Defendant has not suffered any prejudice, and its motion should therefore be denied. *See Gallagher*, 619 F.3d at 844 (party seeking sanctions suffered no prejudice where "there is no basis for inferring that the missing [evidence] would be of a different character than [other available evidence]"). *Cf. Koons v. Aventis Pharm., Inc.*, 367 F.3d 768, 780 (8th Cir. 2004) (no prejudice where there is no evidence that the lost document contained anything that would have affected the course of litigation).

## CONCLUSION

For the reasons set forth above, Defendant's motion for sanctions should be denied.

---

[8] Contrary to Defendant's suggestions that school districts possess unique properties than immunize at-large school board elections from challenge under the Voting Rights Act, the Eighth Circuit has sustained Section 2 claims challenging at-large elections for school boards. *See Harvell*, 71 F.3d 1382; *Buckanaga v. Sisseton Indep. Sch. Dist., No. 54-5*, 804 F.2d 469 (8th Cir. 1986).

[9] Defendant relies on a single district court opinion from Ohio for the proposition that there exist non-tenuous justifications for at-large elections for school boards. *United States v. Euclid City Sch. Bd.*, 632 F. Supp. 2d 740 (N.D. Ohio 2009). Defendant omits the fact that the court in that case found that the existing at-large method of elections for the school board in that case *violated Section 2*, and entered a finding of *liability* for the plaintiff. *See* 632 F. Supp. 2d at 749. And while the district court declined to order single-member districts as a *remedy*, it did order an alternative "limited voting" arrangement that would cure the Section 2 violation. *See id.* at 770. Given that liability has not yet been established in this case, such remedial considerations are obviously not before the Court at this time. In any event, the tenuousness of the Defendant's justifications for at-large elections is not, according to the Eighth Circuit, one of the "predomina[nt]" factors for liability. *See supra* note 7 (quoting *Bone Shirt*, 461 F.3d at 1022).

Dated this 11th day of September, 2015.  Respectfully submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
ANDREW J. MCNULTY, #67138MO
JESSIE STEFFAN, #64861MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, MO 63108
Phone: (314) 652-3114

DALE E. HO*
JULIE A. EBENSTEIN*
SOPHIA LIN LAKIN*
ACLU Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2693

GILLIAN R. WILCOX, #61278MO
ACLU of Missouri Foundation
3601 Main Street
Kansas City, MO 64111
Phone: (816) 470-9938

M. LAUGHLIN McDONALD*
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303
Phone: (404) 500-1235

*appearing pursuant to Local Rule 12.01(F)*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Anthony E. Rothert, hereby certify that on September 11, 2015, I filed the foregoing document using the e-filing system, thereby serving electronic copies via email to all named parties below:

Darold E. Crotzer, Jr.
Crotzer and Ormsby, LLC
130 S. Bemiston Avenue, Suite 602
Clayton, MO 63105
Phone: (314) 726-3040
dcrotzer@crotzerormsby.com

Cindy Reeds Ormsby
Angela Bullock Gabel
Crotzer and Ormsby, LLC
130 S. Bemiston Avenue, Suite 602
Clayton, MO 63105
Phone: (314) 726-3040
cormsby@crotzerormsby.com
agabel@crotzerormsby.com

John A. Safarli
Floyd, Pflueger & Ringer, P.S.
200 W. Thomas Street, Suite 500
Seattle, WA 98119
Phone: (206) 441-4455
jsafarli@floyd-ringer.com

Respectfully Submitted,

/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, MO 63108
Phone: (314) 652-3114

ATTORNEY FOR PLAINTIFFS