UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MISSOURI STATE CONFERENCE          )
OF THE NATIONAL ASSOCIATION   )
FOR THE ADVANCEMENT OF          )
COLORED  PEOPLE, et al.,          )
                                               )
        Plaintiffs,          )
                                               )
    vs.                                )          Case No. 4:14 CV 2077 RWS
                                               )
FERGUSON-FLORISSANT          )
SCHOOL DISTRICT, et al.,          )
                                               )
       Defendants.          )

## REMEDIAL ORDER

Plaintiffs Doris Bailey, Redditt Hudson, F. Willis Johnson, and the Missouri

State Conference of the National Association for the Advancement of Colored

People filed suit against Defendants Ferguson-Florissant School District (the

School District) and the St. Louis County Board of Election Commissioners (the

Election Board) under Section 2 of the Voting Rights Act of 1965, 52 U.S.C. §

10301.  Plaintiffs alleged that the electoral structures used in Ferguson-Florissant

School Board elections, together with historical and socioeconomic conditions,

deprive African American voters in the School District of an equal opportunity to

elect representatives of their choice.  After a six-day non-jury trial and post-trial

briefing, I concluded Plaintiffs established a Section 2 violation.  I enjoined

Defendants from conducting any elections for the Ferguson-Florissant School

Board until a new system is properly implemented. <u>See</u> Mem. Op. & Order, ECF No. 185. At a status conference held to discuss remedies, Defendants were afforded the first opportunity to submit a remedial plan, but the School District stated it preferred that Plaintiffs, rather than the School District, submit initial remedial proposals for the Court's consideration. The Election Board did not object or offer its own remedial proposals. Plaintiffs proposed three remedial plans, with a preference for a cumulative voting system. The School District responded and proposed this Court maintain the current system. The Election Board also responded and indicated it can accommodate any of Plaintiffs' three proposed plans. For the reasons that follow, I will order adoption of a cumulative voting at-large electoral system for Ferguson-Florissant School Board elections with a comprehensive voter education plan.

## I. The current system and the parties' proposed remedial plans

The Ferguson-Florissant School Board is composed of seven members who serve three-year terms and are elected in an at-large system. Under the existing election scheme, board elections are staggered and held off-cycle, with either two or three members elected every April in accordance with Missouri law. <u>See</u> Mo. Rev. Stat. §§ 162.0261; 162.341; 162.291. Voters can cast up to two votes in a two-seat election and up to three votes in a three-seat election but cannot vote more than once for the same candidate in a single election. If voters wish to vote for

only one candidate, they must relinquish their remaining votes (referred to as "single shot" or "bullet" voting). Board seats are awarded to the candidates with the most votes. At the liability stage of these proceedings, I concluded this electoral process in the School District's board elections, together with a number of other factors in the District, deprives African American voters of an equal opportunity to elect board members of their choice.

Plaintiffs proposed three remedial plans for consideration: (1) cumulative at-large voting; (2) a districting plan with seven single-member districts; and (3) a hybrid districting plan with five single-member districts and two at-large limited-voting districts. Of these, Plaintiffs' preferred remedy is cumulative voting. In a cumulative voting system, voters still receive one vote for each available seat but may distribute their votes as they wish, either dividing their votes between different candidates or concentrating their votes by casting more than one vote for a single candidate ("plumping"). Seats are awarded to the candidates with the most votes. Cumulative voting allows voters to concentrate their full voting power behind their preferred candidate or candidates without requiring voters to give up any of the votes they are entitled to cast, as they must do in bullet voting. Plaintiffs propose that the implementation of cumulative voting in the School District's board elections should be preceded by a voter education program to help voters understand their options under cumulative voting and how to implement them.

As alternatives, Plaintiffs also propose two districting plans. Plaintiffs' first proposed plan contains seven single-member districts. In three of these districts, African Americans comprise a majority of 59% or more of the voting age population (VAP). See Cooper Report B-2, ECF No. 201, Ex. 3 B-2. In two other districts, African Americans comprise about 50% of the VAP. Id. Under this plan, candidates would be required to reside in the single-member district in which they seek election. Elections would be staggered according to the end of incumbent board members' three-year terms to minimize disruptions.

Plaintiffs' second proposed plan is a hybrid plan consisting of five board seats elected from single-member districts and two seats elected at-large through limited voting. Under limited voting, voters are allocated fewer votes than the number of seats at issue in an election; in a two-seat election, for example, each voter would cast one vote. Winning candidates in a limited voting election are determined by a plurality vote rule. This plan includes three districts in which African Americans make up 59% of the VAP and a fourth district in which they make up almost 50%. See Cooper Report C-2, ECF No. 201, Ex. 3 C-2. This plan would require candidates to reside in the single-member district in which they are seeking election but would permit any qualified district resident to run for the at-large seats. Again, elections would be staggered according to the end of incumbent board members' three-year terms.

The School District opposes all three of Plaintiffs' proposals and proposes keeping the current system. The School District concedes that two of their priorities—maintaining an at-large system to promote unity and consensus and maintaining staggered terms to promote continuity—can be accommodated in a cumulative voting system. But they oppose cumulative voting because they argue that their third priority—proportionality—already results from the current system, while cumulative voting is not sure to succeed and could actually reduce African American representation. The School District argues that while their proposal to maintain the status quo conflicts with my finding of liability, an analysis of the results of the 2016 election (analysis they did not present at the liability stage), together with all of the evidence already considered, shows the current system results in proportionality and offers the best solution. The School District also opposes both districting plans, arguing they will likely result in less African American representation and may create a new Section 2 violation.

The Election Board responded, stating it is confident it can accommodate any of Plaintiffs' proposals using its current equipment and software. The Election Board could accommodate a cumulative voting system by listing each candidate on the ballot repeatedly for each open seat and indicates only that it would need to know the ballot design, i.e., names should be presented vertically or horizontally. To implement the districting plans, it would need maps and legal descriptions

showing proposed districts. The Election Board indicates the hybrid redistricting plan would require "a complicated ballot form" and notes that "[w]ith complex ballots there is a significant risk that there will be an over voting, voting for more candidates than allowed." Def. St. Louis Cnty. Bd. Resp. 3–4, ECF No. 205.

## II.   Legal standard for choosing a proposed plan

After a court determines liability, it must give the defendant the first opportunity to suggest a legally acceptable remedial plan. Bone Shirt v. Hazeltine, 461 F.3d 1011, 1022 (8th Cir. 2006). If the defendant fails to respond or responds with a legally unacceptable remedy, the court must fashion its own remedy or adopt a remedial plan proposed by the plaintiffs. Id.; cf. Williams v. City of Texarkana, 32 F.3d 1265, 1268 (8th Cir. 1994). "In formulating a remedial plan, the first and foremost obligation of the district court is to correct the Section 2 violation." Bone Shirt, 461 F.3d at 1022. The court should formulate a narrowly tailored plan that achieves population equality (i.e., comports with one person, one vote), does not create a new Section 2 violation, and avoids, when possible, the use of multi-member districts. Id. at 1022–23; see also United States v. Village of Port Chester, 704 F.Supp.2d 411, 449–50 (S.D.N.Y. 2010). The plan "should not 'intrude on state policy any more than is necessary' to uphold the requirements of the Constitution," Bone Shirt, 461 F.3d at 1023 (quoting Upham v. Seamon, 456 U.S. 37, 41–42 (1982) (per curiam)), and should accommodate, to the greatest

extent possible, the policies and preferences expressed in the legislative policy judgments underlying the current electoral scheme and the defendant's remedial plan.  See White v. Weiser, 412 U.S. 783, 795 (1973); Cane v. Worcester Cnty., 35 F.3d 921, 928 (4th Cir. 1994); United States v. Euclid City Sch. Bd., 632 F.Supp.2d 740, 751 (N.D. Ohio 2009).

Of Plaintiffs' three proposals, Plaintiffs prefer an at-large cumulative voting system.  The School District opposes all three plans but offers the least opposition to the cumulative voting proposal, which, as explained below, also allows for maximum accommodation of existing practices and the School District's stated priorities as compared to Plaintiffs' districting plans.  As a result, I will focus my analysis on Plaintiffs' cumulative voting plan.

## III.    The School District's plan is legally unacceptable

"Generally speaking . . . a legally acceptable plan is one that corrects the existing Section 2 violation without creating one anew."  Euclid City, 632 F.Supp.2d at 752.  The School District proposes maintaining the current electoral system, which I concluded results in a Section 2 violation.  This is legally unacceptable on its face.  In an attempt to counter this issue, the School District's remedial report from its expert, Dr. Jonathan Rodden, includes a brief analysis of the 2016 school board election results, which the School District argues will allow me to interpret the 2016 election results and conclude Connie Harge, an African

American candidate who won a seat in 2016, was a Black-preferred candidate, which they then argue shows the current system actually results in proportionality.

The 2016 elections took place in April, after the close of evidence in this case. The School District moved then to reopen the case and asked me to admit and take judicial notice of the certified election results. They did not present any expert analysis of the results. Plaintiffs did not oppose admission of the election results, but asked that if I took notice of those results, I also take notice that: (1) the 2016 election included another African-American candidate who lost; (2) a white incumbent chose not to run for re-election; and (3) the only incumbent who did run is white and won. See Pls.' Response to District's Motion to Reopen 1–2, ECF No. 184. I granted the School District's motion and reopened the case to take judicial notice of the 2016 certified election results as well as the facts pointed out by Plaintiffs. I also concluded that, in the absence of meaningful expert testimony, I could not draw significant legal conclusions based on these facts.

The School District has not moved to reopen the case again or to submit this additional expert analysis as evidence. Rather, the School District includes this analysis in its expert's report on the Plaintiffs' remedial proposals. Their argument seems to be that I should forgo the detailed analysis I conducted of all of the evidence and expert analysis presented over the course of a six-day trial, accept their expert's analysis of the 2016 election results without giving the Plaintiffs a

chance to respond and without considering any context, and simply conclude that because there are currently three African Americans (who, they argue, are all Black-preferred candidates) on the Ferguson-Florissant School Board, the current system results in proportionality and is thus legally acceptable and superior to any of the systems Plaintiff propose.

I decline to do so. It would be neither fair nor helpful to consider the School District's expert analysis on the 2016 election results at this stage. A finding of proportional representation at this moment would not, standing alone, negate my liability finding. See Harvell v. Blytheville Sch. Dist. No. 5, 71 F.3d 1382, 1388 (8th Cir. 1995) (en banc) ("Just as proportional representation is not mandated under Section 2, it also does not preclude finding a violation, because racial reference points do not necessarily reflect political realities."). Plaintiffs have not had the opportunity to respond or offer their own expert analysis. Cf. Cottier v. City of Martin, 604 F.3d 553, 561 n.4 (8th Cir. 2010) (en banc) (rejecting suggestion to consider election data appended to plaintiffs' brief, as the court would not "allow one party to augment its evidentiary presentation in a case involving extensive statistics that were the subject of complex analysis by experts for both parties"). If I were to reopen the case again and give them the chance to do so, we would necessarily extend the case, perhaps past the next election, and then there would seem to be no reason not to reopen the case again to include those

results, and so on. The School District offers no explanation for why it did not seek to introduce expert analysis when it moved to reopen the case at the liability stage. My liability finding was based on careful examination of many factors, including consideration of the present realities in Ferguson-Florissant School District, special circumstances surrounding recent elections, years of election results, and extensive analysis from experts for both parties. That serves as the benchmark for the remedial stage of this case. The current system results in a Section 2 violation and it is legally unacceptable to continue using it.

## IV. Cumulative voting is a legally acceptable plan that accommodates the School District's expressed policies and preferences

### a. Cumulative voting would correct the Section 2 violation

To cleanse a Section 2 violation, a remedial plan must afford minority voters "an equal opportunity to participate in the political processes and to elect candidates of their choice." Thornburg v. Gingles, 478 U.S. 30, 44 (1986) (quotation marks omitted). This does not mean that a remedial plan may be implemented only if it guarantees electoral success for African Americans; rather "the plan must provide a genuine opportunity 'to exercise an electoral power that is commensurate with its population.'" Port Chester, 704 F.Supp.2d at 449 (quoting LULAC v. Perry, 548 U.S. 399, 428 (2006)); see also Johnson v. De Grandy, 512 U.S. 997, 1014 n.11 (1994) ("[T]he ultimate right of § 2 is equality of opportunity,

10

not a guarantee of electoral success for minority-preferred candidates of whatever race."); Bone Shirt, 461 F.3d at 1023 ("The defendants' argument that the remedial plan must provide some sort of guarantee that [Black]-preferred candidates will be elected is not persuasive; all that is required is that the remedy afford [African Americans] a realistic opportunity to elect representatives of their choice.").

Courts evaluate whether cumulative voting will give minorities the opportunity to elect their candidates of choice using a political science concept called the "threshold of exclusion." Port Chester, 704 F.Supp.2d at 450. "The threshold of exclusion 'is the percentage of the vote that will guarantee the winning of a seat even under the most unfavorable circumstances.'" Id. (quoting Cottier v. City of Martin, 475 F.Supp.2d 932, 937 (D.S.D. 2007), vacated on other grounds, 604 F.3d 553 (8th Cir. 2010)). The threshold of exclusion is calculated by the following formula: $1/(1 + \text{number of seats available})$. Id. So, for example, in a two-seat race, the threshold of exclusion would be 33.3% ($1/(1 + 2)=33.3\%$), meaning that even in the "worst case scenario" from the minority group's perspective, minority voters need only exceed 33.3% to have the opportunity to elect their candidate of choice. See id. The "worst case scenario" assumes there are as many majority candidates as there are seats to be filled and the majority spreads its votes evenly among its candidates, casting no votes for the minority-

preferred candidate. See id. It also assumes minority voters will "plump" their votes, i.e., cast all their votes for the minority-preferred candidate. Id.

Ferguson-Florissant School Board elections are for two or three seats, meaning the relevant thresholds of exclusion are 33.3% (two-seat) and 25.0% (three-seat). I have accepted the 2010 Decennial Census figures in this case. Those figures show that the single-race Black voting age population (VAP) in the School District is 47.33% of the overall VAP, meaning the VAP is 142% of the threshold in two-seat elections and 189.2% in three-seat elections.[1] See Engstrom Report 11, ECF No. 201, Ex. 1. The African American VAP is significantly higher than the thresholds of exclusion in both two- and three-seat elections, meaning that even assuming the worst case scenario, African Americans would have the opportunity under a cumulative voting plan to consistently elect at least one candidate of their choice in each election cycle and the potential to elect more than one candidate of choice in a three-seat election. And because the African American VAP is significantly higher than the threshold of exclusion, African Americans "still have an opportunity to elect their preferred candidate even if not all [African Americans] plump their votes behind a single candidate of choice." Port Chester, 704 F.Supp.2d at 451. The fact that I have found cohesiveness

---

[1] The any-part Black VAP is 48.19%. Dr. Engstrom did not calculate the any-part Black VAP as a percentage of the threshold because it is so close to the single-part Black VAP. See Engstrom Report 11 n.14, ECF No. 201, Ex. 1.

among African American voters behind candidates of choice in each of the elections between 2011–2015 makes it reasonable to expect that African American voters will continue to vote cohesively and will be able to take advantage of their voting power under a cumulative voting plan.  See Mem. Op. & Order 78, ECF No. 185; Port Chester, 704 F.Supp.2d at 450 (finding that high levels of cohesion among Hispanic voters made it highly likely they would plump their votes behind a candidate of choice).

The School District does not contest that a cumulative voting system would give African Americans an equal opportunity to elect their candidates of choice. Rather the sum of the School District's opposition to implementing a cumulative voting plan is that under the current system, three African American candidates have been elected to the School Board in the last three years, while cumulative voting does not guarantee a better result.  Again, the question of whether a remedial system will *guarantee* better electoral results is neither a relevant inquiry nor a permitted goal under Section 2.  And this argument seeks to oversimplify a complex case, asking me to conclude that because three African American candidates have been elected in the last three years (and of those three elections, I found two were marked by special circumstances, and one has not been analyzed), African Americans have an equal opportunity to elect their candidates of choice to the Ferguson-Florissant School Board under the current system.  I choose instead

to take account of all of the evidence presented in this case, which led me to conclude that the current system violates Section 2, and implement a remedy that will correct the Section 2 violation.

I do agree with the School District that any discussion of the threshold of exclusion would be incomplete without acknowledging that the various factors I found contributed to African Americans' lack of success in electing their candidates of choice—including, but not limited to, felony disenfranchisement and lower voter registration (due in part to renting as opposed to owning a residence)— mean that reality will not perfectly match the theory. The fact that African Americans comprise 47.33% of the VAP does not mean that 47.33% of votes will be cast by African Americans. At trial, the School District presented evidence indicating the difference in turnout rates between African American and white voters in the School District who are already registered to vote is statistically insignificant. See Mem. Op. & Order 21–22, ECF No. 185. Trial evidence also demonstrated that African Americans in the School District are disproportionally affected by felony disenfranchisement and likely registered to vote at a lower rate than white residents, though the record does not contain evidence regarding these rates in the Ferguson-Florissant School District or analysis of meaningful turnout data that would allow me to apply that data in this context. But the School District presents no argument as to why these factors would lead me to leave in place a

system that has deprived African Americans of an equal opportunity to elect their candidates of choice instead of implementing a system that will provide them that opportunity. Rather, these factors support finding that a change is required to provide equality of opportunity despite the close proportions of the majority and minority populations in the School District. Registration and turnout rates often improve once a court finds and remedies the Section 2 violation.

Based on these considerations, I conclude that an at-large cumulative voting system will afford African American voters in Ferguson-Florissant School District "a genuine opportunity 'to exercise an electoral power that is commensurate with its population'" and will correct the Section 2 violation. See Port Chester, 704 F.Supp.2d at 449 (quoting LULAC, 548 U.S. at 428).

### b. Cumulative voting is a lawful remedy that will not create a new Section 2 violation

Cumulative voting has been adopted as a remedy in a number of Section 2 cases. See, e.g., id. at 453; Engstrom Report 2 & n.1, ECF No. 201, Ex. 1 (noting cumulative voting has been adopted by over 60 local governments in the United States, including 35 school districts, usually in response to complaints that previous systems diluted the votes of minority voters protected under the Voting Rights Act). The School District does not challenge its lawfulness as a remedy

under the Voting Rights Act.[2]  Federal court decisions have repeatedly described

cumulative voting as a potential remedy in Voting Rights Act cases.  See, e.g.,

Branch v. Smith, 538 U.S. 254, 309–10 (2003) (O'Connor, J., concurring) ("[A]

court could design an at-large election plan that awards seats on a cumulative

basis, or by some other method that would result in a plan that satisfies the Voting

Rights Act."); Holder v. Hall, 512 U.S. 874, 910 (1994) (Thomas, J., concurring)

(noting that "nothing in our present understanding of the Voting Rights Act places

a principled limit on the authority of federal courts that would prevent them from

instituting a system of cumulative voting as a remedy under § 2"); Port Chester,

704 F.Supp.2d at 448 (collecting cases mentioning cumulative voting as a remedial

option in Voting Rights Act cases); Euclid City, 632 F.Supp.2d at 752 n.11 ("So,

too, no particular election scheme is required by Section 2; both limited and

cumulative voting systems can be 'legally acceptable.'").

Plaintiffs maintain cumulative voting is consistent with state law principles

and does not conflict with the provisions of Missouri law governing school board

elections.  The School Board does not contest these points or argue cumulative

---

[2]  The School District argues I may not choose any remedy but a single-member district plan (which, they argue, is not a viable remedy either) because single-member districts served as the benchmark remedy in my liability finding.  It is clear that use of this standard at the liability stage, which is required by Gingles, does not bind the court to that remedy.  "[A]t the initial stage of the *Gingles* precondition analysis, the plaintiffs are only required to produce a *potentially* viable and stable solution . . . the *Gingles* preconditions are designed to establish liability, and not a remedy."  Bone Shirt, 461 F.3d at 1019.  "The court may consider, at the *remedial* stage, what type of remedy is possible . . . . But this difficulty should not impede the judge at the liability stage of the proceedings."  Id. (quotation marks omitted).

voting is an inappropriate remedy under Missouri law. Missouri statutory sections governing school board elections in the Ferguson-Florissant School District do not dictate that elections employ a particular voting arrangement or prohibit the use of cumulative voting. See, e.g., Mo. Rev. Stat. §§ 162.291, 162.459. Cumulative voting is not unknown in Missouri law. See, e.g., Mo. Const. Art. 11, § 6 (authorizing cumulative voting in the context of electing corporate directors); Mo. Rev. Stat. § 355.296 (governing cumulative voting in nonprofit corporation elections). I find no reason to conclude Missouri law prohibits cumulative voting in school board elections.[3] See Port Chester, 703 F.Supp.2d at 449 ("[T]he Court does not find that cumulative voting is prohibited by New York law just because the law is silent on the issue.").

---

[3] I reach this conclusion notwithstanding the provision in section 162.492 stating "the names of all candidates shall appear only once on the ballot" or the provisions in sections 115.439, 115.453, and 115.467 that indicate voters cannot "vote for the same person more than once for the same office at the same election." Section 162.492 deals with hybrid systems in urban school districts that include both districts and seats elected at-large. See Mo. Rev. Stat. § 162.492.2. In that specific context, the prohibition on names appearing once addresses a specific issue with the hybrid structure, as the statute says "[n]o candidate may file both at large and from a subdistrict and the names of all candidates shall appear only once on the ballot, nor may any candidate file more than one declaration of candidacy." Id. § 162.492.5. The provisions in section 115, in context, do not appear to be a prohibition on cumulative voting but rather seem to identify an error that would spoil the ballot in a traditional voting system. See id. § 115.467.2 ("If the total number of votes including write-in votes for any office exceeds the number allowed by law, or if a voter has voted more than once for the same person for the same office at the same election, a notation of the fact shall be noted on the back of the ballot card, and it shall be returned with the write-in form, if any, to the counting location in an envelope marked "DEFECTIVE BALLOTS."); see also §§ 115.439 (describing how a voter shall complete a paper ballot and how an election judge should handle a ballot if a voter accidentally spoils his ballot or makes an error); 115.453 (describing how votes are counted and when votes should not be counted if the ballot is filled out improperly).

Cumulative voting also satisfies the constitutional requirements of one-person, one vote and the prohibition on the improper use of race in districting. "District courts have consistently found that cumulative voting complies with one-person, one-vote because the entire population is contained in one district and each voter is given the same number of votes." Id. at 452. Because Plaintiffs' cumulative voting plan does not require drawing districts, there is no concern about the improper use of race in districting. Id. at 452–53.

Finally, a remedial plan should not create a new Section 2 violation. The School District does not argue cumulative voting will create a new Section 2 violation, but it expresses concern about effective coordination among African American voters, pointing out that coordination—effective "plumping"—is crucial if minority voters are to achieve the electoral success available under a cumulative voting system. To that end, Plaintiffs suggest that the first use of cumulative voting in Ferguson-Florissant School Board elections should be preceded by an educational program to help voters understand their options under cumulative voting and how to exercise them.[4] I agree that an educational program is necessary to eliminate any possibility of perpetuating the Section 2 violation if voters do not

---

[4] The School District expresses concern about paying for a cumulative voting educational program but also suggests that if the current system were maintained, they could implement an educational program to instruct voters on the effective use of bullet voting. As a result, and given that the School District cannot continue a Section 2 violation based on cost considerations, this concern does not provide a persuasive basis for maintaining the current system.

fully understand cumulative voting.  See id. at 452.  Because the parties have not provided any detail on what an educational program would look like, I will order the parties to work together to submit a joint proposed educational program, describing the form, format, and schedule for voter education and outreach before the first election using cumulative voting.

### c. Cumulative voting accommodates the School District's priorities

"If the district court must craft its own remedy, that remedy must, to the greatest extent possible, effectuate the policies and preferences expressed in the defendant's remedial plan."  Euclid City, 632 F.Supp.2d at 751; see also Cottier, 475 F.Supp.2d at 936 ("[T]o the extent that an existing plan does not violate the Constitution or federal law, the court's remedial plan must adhere to the legislative judgments reflected in the existing plan.").  The School District's board elections currently occur in a traditional at-large system with off-cycle elections and staggered terms.  Plaintiffs' proposal maintains all of these practices except that it changes from traditional to cumulative voting.

The School District articulates three priorities for its voting system.  First, it prioritizes maintaining an at-large system, which it believes provides unity and consensus and is particularly appropriate for school boards.  Second, the School District prioritizes maintaining staggered electoral terms to maintain continuity in governance.  While these practices are some of the very ones Plaintiffs challenged,

I also found at the liability stage that the School District has legitimate and compelling reasons for using these voting practices. See Mem. Op. & Order 115–16, ECF No. 185. The School District itself makes clear that cumulative voting can accommodate both of these practices. See District's Resp. 10, ECF No. 206 ("the parties agree that cumulative voting is attractive because it retains an at-large system that allows for staggered terms.").

The School District even agrees that cumulative voting is effective in cases where minority voters have been entirely unable to elect their candidates of choice. But they oppose using it here because they argue their third priority—proportionality—has already been achieved by the current system, while cumulative voting is not guaranteed to return the same result. As explained above, this premise is inconsistent with my liability finding and does not provide a persuasive basis for rejecting a cumulative voting system, as Section 2 does not guarantee proportional representation. See Euclid City, 632 F.Supp.2d at 753 (rejecting assertion that a remedy must result in roughly proportional representation, as "[s]uch a contention confuses the use of proportionality as one tool through which a reviewing court determines the possible existence of vote dilution on the one hand, with a guarantee of proportional representation on the other . . . [t]he former is common sense, the latter is prohibited by statute").

The cumulative voting system Plaintiffs propose would be similar to the current system the state has in place, retaining the majority of the elements of the current system and allowing the School District to maintain the aspects of its system that it prioritizes, but with the key difference that it "permits minority voters, and all other voters, to cast a more efficacious type of 'single-shot' vote than they may in more traditional multi-seat elections." See Richard L. Engstrom, *Cumulative and Limited Voting: Minority Electoral Opportunities and More*, 30 St. Louis U. Pub. L. Rev. 97, 102 (2010); see also id. at 103 ("This alteration in the voting rules within an at-large system, however, can cleanse the multi-seat format of its tendency to dilute the vote of a minority."); Holder, 512 U.S. at 909 n.15 (1994) (Thomas, J., concurring) (explaining that cumulative voting allows a group of minority voters "to concentrate its voting power behind a given candidate without requiring that the minority voters themselves be concentrated into a single district"); Euclid City, 632 F.Supp.2d at 755 (noting it is clear why cumulative voting "provides a cohesive minority group increased opportunity relative to a traditional voting system," as "[i]n a district with extreme racial polarization, a minority group will be unable to elect a candidate because, of course, they are outvoted for every available seat," while under cumulative voting, "if minority voters coalesce around a single candidate, that candidate *will* win so long as certain numerical conditions . . . are met"). Given the unique circumstances of this case,

this change can correct the Section 2 violation while adhering as closely as possible to the legislative judgments reflected in the existing plan and the priorities the School District has articulated.

### d. Circumstances in Ferguson-Florissant School District warrant deviating from the preference for single-member districts

"There is a strong preference for single member districts in judicially fashioned remedial plans." Cottier, 475 F.Supp.2d at 939. "An at-large district from which multiple candidates are elected is considered a multi-member district." Id. If a court chooses a multi-member remedial plan, it must articulate a "'singular combination of unique factors'" that warrant deviating from the preference for single-member districts. Id. (quoting Connor v. Finch, 431 U.S. 407, 415 (1977)). Such a combination of factors warrants deviation here.

The demographics of the Ferguson-Florissant School District make this case unique and warrant use of a unique remedy. As I explained at the liability stage, "[t]he facts of this case, which include African American and white voting-age populations at levels of near numerical parity, and a trend in the District that suggests the African American voting-age population is growing, set it apart from most § 2 cases, making review especially challenging." Mem. Op. & Order 118, ECF No. 185. A cumulative voting plan can accommodate the changing demographics in Ferguson-Florissant School District, allowing the relative voting

22

power of any given demographic or interest group to shift with the relative voting size of those groups without having to wait for redistricting. Cumulative at-large voting also extends equality of opportunity to all voters in the district, regardless of where they live, and can be a superior model in a district like Ferguson-Florissant that has high levels of racial polarization and political cohesion. See Euclid City, 632 F.Supp.2d at 755 (noting that in districts with high levels of racial polarization, cumulative voting "provides a cohesive minority group increased opportunity relative to a traditional voting system"). The large African American population in the School District, coupled with shifting demographics, makes it possible to accommodate legislative policy judgments and the School District's preferences and maintain aspects of the current system that may normally have to be changed to correct the Section 2 violation.

Significantly, neither party prefers a districting plan. The School District is convinced Plaintiffs' proposed districting plans would result in less African American representation and may create a new Section 2 violation. The School District argues single-member districts are an inappropriate remedy in a district that is experiencing demographic transitions, as in Ferguson-Florissant. The School District points out that Plaintiffs' proposed districts would group incumbents together, including by placing the two most recently elected African American candidates in one district and two white incumbents in one of the

majority-minority districts, and argues single-member plans would likely insulate white incumbents and risk losing every African American incumbent on the board. The School District argues single-member districts would also exacerbate the candidate recruitment problem. Dr. Rodden indicates African American candidates who have been successful in the School District have relied on district-wide support. And the School District argues Plaintiffs' hybrid plan, which includes five single member districts and two at-large seats elected through limited voting, combines an unfamiliar voting system with a flawed districting plan, effectively combining the worst elements of the other proposals.

All of these points support finding that an alternative voting scheme in this case "will 'afford minorities a greater opportunity for participation in the political process than do single member districts,' [which] is an exceptional circumstance warranting rejection of the preference for single-member districts." Cottier, 475 F.Supp.2d at 941 (quoting Wallace v. House, 538 F.2d 1138, 1145 (5th Cir. 1976)); see also Euclid City, 632 F.Supp.2d at 758 (explaining that "use of at-large districts appears more important to school boards than other elected bodies, because [u]nlike other political structures, school boards exist for the precise purpose of cultivating this consensus and shielding the provision of education from the clash of political conflict" (quotation marks omitted)).

Finally, because the School District currently uses and prefers to keep using an at-large system, keeping an at-large system, rather than adopting a districting plan, gives deference to state policy judgments and helps preserve the School District's priorities.  And as the current system is at-large, a cumulative at-large remedy matches the dilution problem in this case, solving a jurisdiction-wide issue that affects all African American voters in the School District.  See Engstrom, *Cumulative and Limited Voting*, 30 St. Louis U. Pub. L. Rev. at 114.  Together, these unique circumstances warrant deviating from the preference for single-member districts and instead implementing an at-large cumulative voting system.

## V.    Conclusion

The School District's proposal to maintain the current system is legally unacceptable.  Plaintiffs' proposal to implement an at-large cumulative voting system with staggered terms and off-cycle elections, preceded by a voter education program, is a legally acceptable remedy that will correct the Section 2 violation. To effectuate this system, the parties must propose a full plan that includes the form, format, and schedule for providing voter education and outreach efforts and the duration of such efforts.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Ferguson-Florissant School District and the St. Louis Board of Election Commissioners are enjoined from

conducting school board elections via the traditional at-large electoral method at issue in this litigation.

**IT IS FURTHER ORDERED** that the Court adopts Plaintiffs' cumulative voting proposal, as detailed in this memorandum and order, and Defendants shall implement a cumulative voting at-large electoral system for Ferguson-Florissant School District board elections with a comprehensive voter education program.

**IT IS FURTHER ORDERED** that the parties shall propose for court approval a joint proposal for a voter education program that includes the form, format, and schedule for providing voter education and outreach before the first election using cumulative voting.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction over this matter to enter further relief or such other orders that may be necessary to carry out the terms of this Order.

**IT IS FURTHER ORDERED** that the Clerk is directed to administratively close this case.

A status conference in this matter remains set for **Tuesday, November 22, 2016 at 11:30 a.m.** in Courtroom 16-South.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 21st day of November, 2016.