## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| MISSOURI STATE CONFERENCE OF | ) | |
| THE NATIONAL ASSOCIATION FOR | ) | |
| THE ADVANCEMENT OF COLORED | ) | |
| PEOPLE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:14-cv-02077-RWS |
| | ) | |
| FERGUSON-FLORISSANT SCHOOL | ) | |
| DISTRICT and ST. LOUIS COUNTY | ) | |
| BOARD OF ELECTIONS | ) | |
| COMMISSIONERS, | ) | |
| Defendants. | ) | |

### Memorandum in Support of Motion for Attorneys' Fees and Non-Taxable Costs

Plaintiffs are entitled to seek an order requiring Defendants to pay their attorneys' fees and non-taxable costs pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e).[1] For the reasons that follow, this Court should award Plaintiffs' attorneys' fees and non-taxable expenses.

### I.      Fee-Shifting in Civil Rights Cases.

The same federal law that prohibits deprivation of rights secured by federal laws also provides for an award of attorneys' fees to prevailing plaintiffs. *See* 42 U.S.C. §§ 1983, 1988. Moreover, "[i]n an action to enforce the Voting Rights Act 'the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs.'" *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 WL 11120966, at *1 (E.D. Wash. June 19, 2015) (quoting 52 U.S.C. § 10310(e)). Because the statutes "contain nearly identical language and are driven by similar congressional

---

[1]      Plaintiffs have separately filed a bill of costs for reimbursement of taxable costs. *See* 28 U.S.C. § 1920.

purposes," they are construed similarly. *Hastert v. Illinois State Bd. of Election Comm'rs*, 28 F.3d 1430, 1439 n.10 (7th Cir. 1993), *as amended on reh'g* (June 1, 1994).

The Eighth Circuit has articulated the important public policy underlying the fee-shifting provisions implicated by successful litigation enforcing civil rights:

> Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See Id.* A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest...." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).
>
> In order for such a policy to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement. "It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...." S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913.

*Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993) (alterations in original). The availability of attorneys' fees to successful litigants in civil rights cases ensures "effective access to the judicial process" for litigants with meritorious claims. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *see also Casey*, 12 F.3d at 805.

2

## II.     Plaintiffs are the Prevailing Party

Plaintiffs are the prevailing party in this case. "A prevailing party [is] one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989); *see also Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 909 (8th Cir. 2012) ("[t]o obtain 'an award of litigation costs,' a party must be a 'prevailing' or 'successful' party, i.e., 'one who has been awarded some relief by the court.'") (quoting *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 603 (2001)). "The Voting Rights Act was aimed at the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to vote because of their race." *Allen v. State Bd. of Elections*, 393 U.S. 544, 565 (1969). Because Plaintiffs established that the election scheme they challenged diluted their right to vote, they prevailed on their Voting Rights Act claim and are the prevailing party.

## III.    There are No Special Circumstances Exist That Would Render an Award Unjust

Although the statutes refer to a court's discretion to award fees to a prevailing party in a civil rights case, that discretion is narrow. A prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1986); *accord Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (per curium) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)).

There are no special circumstances present in this case. The "judicially created exception [for special circumstances] should be narrowly construed." *Hatfield v. Hayes*, 877 F.2d 717, 720 (8th Cir. 1989) (citing *Martin v. Heckler,* 773 F.2d 1145, 1150 (11th Cir.1985) (en banc)).

The fact that a defendant was applying a state statue is not a special circumstance warranting denial of attorneys' fees. *See Snider v. Peters*, 928 F. Supp. 2d 1113, 1119 (E.D. Mo. 2013), *aff'd sub nom. Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014); *Kennard v. Kleindienst*, No. 2:14-CV-04017-BCW, 2015 WL 4076473, at *2 (W.D. Mo. June 5, 2015) ("Defendant's belief that she was compelled by state law to enforce the statute is not a special circumstance that would render fees unjust."). "If in fact [those enforcing a law] are wrong, and the law they are enforcing turns out to be invalid, § 1988 puts the financial burden on the state officials. The judgment of Congress is that the burden rests more properly on them than on the party who has been wronged by the application of an invalid law." *Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999), *aff'd*, 530 U.S. 914 (2000); *see also Love v. Mayor, City of Cheyenne*, 620 F.2d 235 (10th Cir.1980) (holding that good faith is not a special circumstance justifying the denial of attorney's fees under § 1988). Moreover, though state law designated the at-large format of elections, as Plaintiffs noted at the first status conference in March 2015, once this lawsuit was filed, the parties had the authority to consent to a different electoral system in settlement, subject to the Court's approval.[2]

---

[2]     The Eighth Circuit has recognized that "[w]hile parties can settle their litigation with consent decrees, they cannot agree to disregard valid state laws." *St. Charles Tower, Inc. v. Kurtz*, 643 F.3d 264, 268 (8th Cir. 2011) (citations and quotation omitted). However, the Court went on to explain that there is an exception such that "if the consent judgment's remedy is necessary to rectify a violation of federal law, the district court can approve a consent decree which overrides state law provisions." *Id.* at 270 (citation, quotation, and emphasis omitted).

Defendants have suggested elsewhere that Plaintiffs' counsel might have fundraised off of this case. Counsel's subsequent inquiries suggest that there have been no fundraising appeals specific to this case. In any event, the possibility that fundraising efforts might make mention of this case is not a special circumstance that could justify denial of attorneys' fees. Even "specific fund-raising activities by an organization representing a prevailing civil rights plaintiff are irrelevant to the issue of attorneys' fees available under the Civil Rights Attorney's Fees Awards Act of 1976." *McLean v. Arkansas Bd. of Educ.*, 723 F.2d 45, 49 (8th Cir. 1983).

### IV.      Computation of the Lodestar

The general principles governing the award of attorneys' fees are well settled. First, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates to determine the product or "lodestar" figure. *Hensley*, 461 U.S. at 433. The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984); *accord Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (holding that "the lodestar award … is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar"); *Casey*, 12 F.3d at 805. In the regard, the Supreme Court stated: "We . . . take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by [§ 1988] should compensate" for "the work product of an attorney." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 285 (1989). "[T]here is a 'strong presumption' that the lodestar figure is reasonable[.]" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The lodestar total is reasonable in this case because Plaintiffs' success was complete.

## A.  Hourly Rates

In setting reasonable attorneys' fees, the general touchstone is whether the rate is in line with those prevailing in the community for comparable services by lawyers of reasonably comparable skill, experience, and reputation. *See Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1985). However, the Eighth Circuit has held that civil rights litigation may be appropriately subject to national rather than local rates. *Casey,* 12 F.3d at 805 ("A national market or a market for a particular legal specialization may provide the appropriate market.").

In this case, Plaintiffs recognized that voting rights litigation is highly specialized, and, as a result, brought in out-of-state counsel with voting rights experience. *See* Rothert affidavit (Ex. 1) at ¶ 9. The School District had the same recognition and employed counsel from Washington that specializes in VRA litigation. *Id*. Indeed, federal courts have rated voting cases among the most complex tried by federal courts.  According to a district court time study conducted by the Federal Judicial Center measuring the complexity and time needed to handle matters by the district courts, voting rights cases were among the top five most complex cases and were given a weight of 3.86 compared to 1.0 for an "average" case.  Federal; Judicial Center, 2003-2004 District Court Case-Weighting Study, Table 1, p. 5 (2005). Accordingly, for purposes of determining the loadstar, the home rates of Plaintiffs' attorneys are appropriate. *See Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) ("[O]ur cases have consistently recognized that an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation.").

The appropriate attorney hourly rates for calculation of the lodestar are as follows:

| Attorney | Rate | Source |
|---|---|---|
| Julie Ebsenstein | $375.00 | Ex. 2, ¶ 9. |

| | | |
|---|---|---|
| Anthony Rothert | $375.00 | Ex. 1, ¶ 6. |
| Laughlin McDonald | $450.00 | Ex. 3, ¶ 7. |
| Dale Ho | $400.00 | Ex. 4, ¶ 6. |
| Sophia Lin Lakin | $275.00 | Ex. 5, ¶ 7. |
| Jessie Steffan | $250.00 | Ex. 6, ¶ 6. |
| Gillian Wilcox | $275.00 | Ex. 7, ¶ 5. |
| Andrew McNulty | $275.00 | Ex. 8, ¶ 4. |

For the reasons provided in the supporting affidavits, these rates are reasonable.[3]

The term "attorney's fees" in 42 U.S.C. § 1988 "embrace[s] the fees of paralegals as well as attorneys." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580 (2008) (citing *Missouri v. Jenkins,* 491 U.S. 274 (1989)). A total of 538.21 paralegal hours were spent on this litigation. *See* Ex. 2, ¶ 7 (setting forth hours of Molly Rugg and Lila Carpenter); Ex. 1, ¶ 7 (setting forth hours of Michael Hill). For the reasons explained in Mr. Rothert's affidavit, Ex. 1, ¶ 7, a reasonable hourly rate for Mr. Hill is $125.00. For the reasons explained in Ms. Ebenstein's affidavit, Ex. 2, ¶ 8, a reasonable hourly rate for Ms. Rugg and Ms. Carpenter is $125.00.[4]

### B.  Hours

Litigating this case required the investment of a significant number of attorney and paralegal hours. In fact, Plaintiffs' attorneys spent 4,157.37 actual hours on this case in addition to 538.21 hours contributed by paralegals. This is not surprising given the complexity of this

---

[3]     Additional evidence that the rates for the ACLU of Missouri attorneys are appropriate for the St. Louis market based on the attorneys' skill, experience, and reputation is the affidavit of local attorney Susan Kister. Ex. 9. Similarly, the reasonableness of the rates for the New York attorneys is further supported by the affidavit of Elizabeth S. Saylor. Ex. 10.

[4]     Although time for law clerks is also compensable and Plaintiffs' attorney hours were reduced because of the assistance of law clerks, reimbursement for law clerk time is not sought. Ex. 1 ¶ 4; Ex. 2, ¶ 9.

type of case. However, the number of hours was exacerbated by the School District's decision to employ a scorched-earth defense and pursue every available opportunity to extend litigation.[5] As the Eighth Circuit has observed, parties cannot "continue to contend that they have no liability here at all, with one breath, and then assert that this case was a 'pushover' for plaintiff with the next." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *see also City of Riverside*, 477 U.S. at 580 n. 11 ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the Plaintiffs in response.") (internal quotation marks and citation omitted); *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985) ("While CB & T is entitled to contest vigorously Henson's claims, once it does so it cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended."). Moreover, the need for extended litigation at all was occasioned by the School District's refusal to even entertain discussions of settlement or mediation, which Plaintiffs offered repeatedly from the start.

As the Ninth Circuit has explained, there is no incentive to over-lawyer a case like this:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a

---

[5]     The School District's contesting of every single *Gingles* factor, even including *Gingles* I, is virtually unprecedented. In addition, Plaintiffs expended attorney hours deposing an expert disclosed by the School District who had never even read his expert report and whom the District chose not to have testify at trial. They spent dozens of hours responding to the School District's motion for sanctions, which accused Plaintiffs' attorneys of professional misconduct without any evidence of wrongdoing by anyone, much less by the attorneys. They spent time responding to Bill Cooper's qualification as an expert. They were forced to ask the Eighth Circuit to hold in abeyance the School District's premature application for leave to file an interlocutory appeal and then prepare and file a motion to dismiss when the School District failed to withdraw the application even though it was clear the Eighth Circuit had no jurisdiction to grant it.

8

slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). This disinclination to spend unnecessary time on a case is particularly true of already over-extended attorneys at a non-profit organization.

The actual hours contributed were as follows:

|  | Hours | Source | Rate | Total |
|---|---|---|---|---|
| Julie Ebenstein | 1,544.96 | Ex. 2, ¶ 2 | $375.00 | $579,360.00 |
| Anthony E. Rothert | 381.4 | Ex. 1, ¶ 3 | $375.00 | $143,025.00 |
| Laughlin McDonald | 176.25 | Ex. 3, ¶ 2 | $450.00 | $79,312.50 |
| Dale Ho | 384.1 | Ex. 4, ¶ 4 | $400.00 | $153,640.00 |
| Sophia Lin Lakin | 1,315.66 | Ex. 5, ¶ 3 | $275.00 | $361,806.50 |
| Jessie Steffan | 203.7 | Ex. 6, ¶ 3 | $250.00 | $50,925.00 |
| Gillian Wilcox | 107.3 | Ex. 7, ¶ 3 | $275.00 | $29,507.50 |
| Andrew McNulty | 44 | Ex. 8, ¶ 2 | $275.00 | $12,100.00 |
| Molly Rugg | 409.25 | Ex. 2, ¶ 7 | $125.00 | $51,156.25 |
| Lila Carpenter | 63.86 | Ex. 2, ¶ 7 | $125.00 | $7,982.50 |
| Michael Hill | 65.1 | Ex. 1, ¶ 7 | $125.00 | $8,137.50 |
|  |  |  | Total: | $1,476,952.75 |

The lodestar, and presumptive attorneys' fee, is $1,476,952.75.

**V.    Voluntary Reduction to the Lodestar**

Because of the unique circumstances of this case and Plaintiffs' sincere belief that the School Board's bullheaded approach to this litigation is precisely the type of non-responsiveness to the needs of the African American community that this case is designed to reduce, some departure from the lodestar is appropriate here.

There is nothing unusual or undesirable about the use of multiple attorneys. *A.J. by L.B. v. Kierst*, 56 F.3d 849, 863-64 (8th Cir. 1995) ("The use of more than one attorney in multiple party litigation has been recognized by courts, including our own, as both desirable and common."). Indeed, Defendants have employed five attorneys. Nevertheless, Plaintiffs' counsel have adopted general rules, describe in their affidavits, for reducing the hours for which they are seeking compensation from the actual hours contributed to this litigation. These include not seeking compensation for: (1) other than co-lead counsel Ms. Ebenstein and Mr. Rothert, attorney hours spent at trial on days where an attorney did not examine a witness; (2) hours spent at any depositions attended by any more than two other plaintiffs' attorneys; (3) hours spent with more than one attorney preparing witnesses for deposition or trial testimony by any attorney other than the attorney defending the deposition or conducting the direct examination; and (4) other than co-lead counsel Ms. Ebenstein and Mr. Rothert, hours spent participating in team meetings and calls. This, together with the additional voluntary reductions by individual attorneys, results 285.45 fewer hours.

The Eighth Circuit has "permitted recovery of the full hourly rate for attorney-travel time." *Rose Confections, Inc. v. Ambrosia Chocolate Co., a Div. of W.R. Grace & Co.*, 816 F.2d 381, 396 (8th Cir. 1987). Ultimately, whether travel time is fully compensable is a question conferred to the discretion of the district court. *See Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991). In this case, Plaintiffs suggest that the travel time for out-of-state counsel be compensated at only fifty percent by reducing the travel hours in half. This results in 115.74 fewer hours.

Although Mr. Rothert has been awarded fees at an hourly rate of $375.00, and that rate remains reasonable, in this case, Plaintiffs suggest that this Court employ his hourly rate from several years ago: $365.00. This results in a further reduction of the lodestar by $3,737.00.

10

Finally, given the unique circumstances of this case and the fact that government entities are incurring financial liability as a result of poor decision making by elected officials, Plaintiffs suggest an across-the-board reduction of New York already-reduced attorneys' fees by twenty percent to bring them the total more in line with what Missouri attorneys would be paid.[6] This results in a further reduction of $202,800.20.

All told, Plaintiffs propose that the lodestar be modified to the following:

| | Hours | Rate | Subtotal | 20% NY Reduction | Total |
|---|---|---|---|---|---|
| Julie Ebenstein | 1,486.64 | $375.00 | $557,490.00 | $111,498.00 | $445,992.00 |
| Anthony E. Rothert | 373.7 | $365.00 | $136,400.50 | - | $136,400.50 |
| Laughlin McDonald | 132.2 | $450.00 | $59,490.00 | - | $59,490.00 |
| Dale Ho | 309.1 | $400.00 | $123,640.00 | $24,728.00 | $98,912.00 |
| Sophia Lin Lakin | 1210.44 | $275.00 | $332,871.00 | $66,574.20 | $266,296.80 |
| Jessie Steffan | 143 | $250.00 | $35,750.00 | - | $35,750.00 |
| Gillian Wilcox | 57.1 | $275.00 | $15,702.50 | - | $15,702.50 |
| Andrew McNulty | 44 | $275.00 | $12,100.00 | - | $12,100.00 |
| Molly Rugg | 409.25 | $125.00 | $51,156.25 | - | $51,156.25 |
| Lila Carpenter | 63.86 | $125.00 | $7,982.50 | - | $7982.50 |
| Michael Hill | 65.1 | $125.00 | $8,137.50 | - | $8,137.50 |
| | | Total: | $1,340,720.25 | $202,800.20 | $1,137,920.05 |

---

[6]    A similar reduction is not suggested for Mr. McDonald for two reasons. First, his experience and expertise in VRA cases are unmatched by anyone. *See* Ex. 3. Second, his Georgia rate is comparable to what he would be awarded in using local rates. *See Republican Party of Minnesota v. White*, 456 F.3d 912 (8th Cir. 2006) (approving hourly rate of $425 in a § 1983 case charging a violation of the First Amendment) ($425 in 2006 is the equivalent of $503.38 in 2016); *Wickersham v. City of Columbia*, 05-4061-CV-C-NKL, 2007 WL 1813194, *1 (W.D. Mo. June 21, 2007) (awarding $400.00 per hour for partner in First Amendment case tried in 2005) ($400 in 2007 is the equivalent of $460.65 in 2016); *Holland v. City of Gerald, Mo.*, No. 4:08CV707 HEA, 2013 WL 1688300, at *4 (E.D. Mo. Apr. 18, 2013) (awarding fees at a rate of $450 to Robert Herman and Roger Goldman) ($450 in 2013 is the equivalent of $461.64 in 2016).

.

The total modified lodestar of $1,137,919.55 represents a reasonable attorneys' fee award in this case. By comparison, in a similar type of VRA case in 2015 that was decided entirely on summary judgment without a trial, attorneys' fees were awarded in the amount of $1,521,911.50. *Montes*, 2015 WL 11120966, at *13.

VI.     Non-Taxable Expenses

A prevailing party in civil rights litigation is entitled to the non-taxable expenses. *Warnock v. Archer,* 397 F.3d 1024, 1027 (8th Cir. 2005) (prevailing party is entitled to "items reasonably charged by attorneys to their clients"). Moreover, in VRA cases, reasonable expert fees and other reasonable litigation expenses are recoverable as costs. 52 U.S.C. § 10310(e).

 Plaintiffs do not seek reimbursement for many out-of-pocket expenses, including travel for in-state counsel, meals (other than lunches during trial), routine printing and copying (other than exhibits for trial), and conference calls. They do, however, seek reimbursement for some of the out-of-pocket costs reasonably charged by attorneys to their clients, which are detailed and documented in the affidavits of Ms. Ebenstein and Mr. Rothert.[7] These expenses total $232,320.43. Ex. 1, ¶ 8; Ex. 2; ¶ 10.[8] By comparison, the non-taxable expenses awarded in *Montes* were $320,461.26. 2015 WL 11120966, at *13.

---

[7]     Plaintiffs do not seek reimbursement for all of the out-of-pocket expenses reasonably charged by attorneys to their clients. Plaintiffs have excluded $10,759.41 of such actual expenditures from their request. Ex. 2, ¶ 11.

[8]     Plaintiffs have not yet been billed for the mediation session held on December 7, 2016. Defendants should be responsible for that expense as well.

Plaintiffs also request that any out-of-pocket expenses this Court determines were erroneously included in their Bill of Costs, ECF No. 228, be instead awarded as non-taxable expenses.

## VII.   Joint and Several Liability

"Non-prevailing defendants are generally held jointly and severally liable for attorneys' fees and costs, regardless of an individual defendant's degree of culpability." *Snider v. Peters*, 928 F. Supp. 2d 1113, 1118–19 (E.D. Mo. 2013), *aff'd sub nom. Snider v. City of Cape Girardeau*, 752 F.3d 1149 (8th Cir. 2014) (recognizing "general rule that non-prevailing defendants are to be held jointly and severally liable for attorneys' fees and costs."). "This is especially true where a plaintiff's claims against multiple defendants are extremely inter-related, arising out of the same transaction or occurrence or series of occurrences and sharing common questions of law and fact." *Id*. at 1119 (quotation omitted). While appropriation of an award between the two defendants might be warranted in some circumstances, that is a matter better resolved between defendants privately in this case. Neither Plaintiffs nor this Court are privy to any understandings between these two government entities that were represented in this case by the same law firm.

While the St. Louis County Board of Elections was a less-active participant in this case—instead relying on the School District to mount its defense—it cannot avoid responsibility for paying Plaintiffs' attorneys' fees. The Eighth Circuit rejected the argument that a defendant that "did not actively participate in the lawsuit … should not, therefore, be responsible for the attorney's fees." *Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999), *aff'd*, 530 U.S. 914 (2000). Although the role of a non-active defendant "may have been minor, … this does not excuse him from having to share in the actual costs." *Id*. As with the defendant in *Carhart*, the

13

Board of Elections "relied on [its] co-defendant[] to present their defense," had enforced the statute at issue in this case,  and "cannot now avoid helping to pay the prevailing party's attorney's fees." *Id*.

## VIII.   Conclusion

For the foregoing reasons, Plaintiffs request this Court award them attorneys' fees in the amount of $1,137,920.05, non-taxable expenses in the amount of $232,320.43, and the costs of mediation.

Respectfully submitted,


/s/ Anthony E. Rothert
ANTHONY E. ROTHERT, #44827MO
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2016, I filed the foregoing document using the e-filing system, thereby serving electronic copies via email to all named parties below:

Darold E. Crotzer, Jr.
Kathryn B. Forster
Crotzer and Ormsby, LLC
130 S. Bemiston Avenue, Suite 602
Clayton, MO 63105
Phone: (314) 726-3040
dcrotzer@crotzerormsby.com
kforster@crotzerormsby.com

Cindy Reeds Ormsby
Angela Bullock Gabel
Crotzer and Ormsby, LLC
130 S. Bemiston Avenue, Suite 602
Clayton, MO 63105
Phone: (314) 726-3040
cormsby@crotzerormsby.com
agabel@crotzerormsby.com

John A. Safarli
Floyd, Pflueger & Ringer, P.S.
200 W. Thomas Street, Suite 500
Seattle, WA 98119
Phone: (206) 441-4455
jsafarli@floyd-ringer.com

/s/ Anthony E. Rothert