UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MISSOURI STATE CONFERENCE OF ) <br> THE NATIONAL ASSOCIATION FOR THE ) <br> ADVANCEMENT OF COLORED PEOPLE, ) <br> REDDITT HUDSON, F. WILLIS JOHNSON ) <br> and DORIS BAILEY, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> FERGUSON-FLORISSANT SCHOOL ) <br> DISTRICT and ST. LOUIS COUNTY BOARD ) <br> OF ELECTION COMMISSIONERS, ) <br> ) <br> Defendants. ) | Civ. No. 14-2077 |

**DEFENDANT ST. LOUIS COUNTY BOARD OF ELECTION COMMISSIONERS'
RESPONSE TO PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES**

COMES NOW Defendant, St. Louis County Board of Election Commissioners and through its undersigned counsel and in response to Plaintiffs' Request for Attorneys' Fees states as follows.

**I**

**History of the Case**

Plaintiffs' Complaint was filed on December 18, 2014. Although the St. Louis County Board of Elections (the "BOEC") was named as a defendant, the twelve page Complaint made no allegations concerning actions of the BOEC. The DEMAND FOR RELIEF mentioned enjoining "DEFENDANTS" but contained no specific reference to the BOEC. See Complaint, p. 11. In its ANSWER the BOEC stated, "[T]his Defendant does not oppose the jurisdiction or venue of this Court but states that, since no action is requested against the Defendant, no answer is necessary." See Answer, p. 1. Regarding

the Court's question about the BOEC's participation, counsel for the BOEC indicated the BOEC would obey any order of the court and it did not have a position as to the merits of the Voting Rights Act claim.

No evidence was ever presented indicating an action or inaction of the BOEC was in violation of the Voting Right Act of 1965, 52 U.S.C. § 10301. This Court's 119 page MEMORANDUM AND ORDER contained only a mention of the BOEC as follows:

> Defendant ST. LOUIS BOEC is the governmental entity charged with conducting elections in St. Louis County. It is responsible for conducting elections for positions on the Board in FFSD.

See Memorandum and Order, p. 4.

## **Memorandum and Order**

There is no other mention of the BOEC in the Court's Memorandum and Order. The BOEC did not participate in the presentation of evidence or elicit testimony from witnesses. Other than submission to the Court a statement of its capability to cooperate in implementing a remedy, the BOEC has never urged any particular result and has no interests similar to the Ferguson Florissant School District (the "FFSD").

Additionally, the BOEC has always maintained its neutrality in this case and, on occasion, has responded to questions proposed by the Court which would confirm the BOEC's capability to enforce the Court Order. These facts support the BOEC's legal arguments that: (1) the BOEC was not an "enforcement entity" which had the power to rectify any violation of the Voting Rights Act; (2) Plaintiffs did not gain any relief against BOEC which would create "a material alteration of the legal relationship of the

parties"; and (3) Plaintiffs were not "prevailing parties" against this Defendant, the BOEC.

## II

**The BOEC does not perform any duties as an "enforcement official."**

Plaintiffs' Memorandum for Attorneys' Fees assumes the BOEC is liable for violation of the Voting Rights Act. That conclusion is not supported by the pleadings, the evidence, or any interpretation of the law regarding defendants who had no active participation in the case. Such an assumption ignores a well-established principle that a defendant who did not actively participate in the trial and was **not** an "enforcement official" is not vicariously liable under § 1988. *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736 (1980); *Annunziato v. The Gan, Inc.*, 744 F.2d 244, 253 (2nd Cir. 1984); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984); D*eary v. Guardian Loan Co., Inc.*, 623 F.Supp. 630, 631-35 (S.D. NY 1989); and *Talley v. District of Columbia*, 433 F.Supp. 2d 5, 7-9 (D.C. Cir. 2006).

Plaintiffs bear the burden of establishing its entitlement to fees and the proper amount of those fees. See *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1982). Neither the allegations in the Complaint, nor any evidence at trial established enforcement action by the BOEC. The only possible basis for Plaintiff's assertion of liability is a finding that the BOEC is an enforcing agency. *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736 (1980).

In *Deary v. Guardian Loan Co., Inc.*, 623 F.Supp. 630, 639 (S.D. NY 1989), the court provided a succinct analysis of the basis for the "enforcing-official theory of

liability". In the absence of direct action by an official, the *Deary* court determined liability as follows:

> The law supports the proposition that plaintiffs who have successfully attacked the constitutionality of a statute have prevailed against *enforcement official defendants* within the meaning of § 1988. However, a careful reading of the case law reveals that such awards are based upon an explicit or implicit determination that a defendant held liable for fees is in the fact the "*officer charged with responsibility for enforcing the legislative policy*."

*Id.* at 635.(citation omitted) (emphasis added).

As a matter of law BOEC is not an "enforcement official." Plaintiffs' reliance on *Carhart v. Stenberg*, 192 F.3d 1142 (8th Cir. 1999) is misplaced. Liability in the *Carhart* case was premised upon the enforcing-official theory of liability. Munch, a county attorney, did not actively participate in the trial of the case but was nonetheless liable for fees on the basis that Munch was an *enforcement official* with the power to prosecute under the unconstitutional statute. *Id.* at 1152. The court found that Munch "has made it clear that he *would* prosecute under the statute" and "[h]e relied on his codefendants to present their defenses of the constitutionality of the statutes, a statute, which he had indicated he *would enforce* and he could not then avoid paying the prevailing party's attorneys' fees." *Id.*

Based upon the court's holding in *Carhart*, Plaintiffs conclude that the BOEC's inaction at the trial alone makes it liable under the same principles. This assumption implies any party which fails to defend itself, automatically qualifies as a losing party liable for plaintiff's legal fees. The distinguishing factor is that the BOEC, which derives

4

all of its power from the Missouri Statutes, is not vested with any power of enforcement relative to alleged misconduct of FFSD.

   **A. Authority of the BOEC.**

Missouri courts have limited the BOEC's powers to those specifically enumerated in the statutes. The court in *Dienoff v. Galkowski*, 426 S.W. 3d 633 (Mo. Ct. App. 2014) confirmed the BOEC's lack of enforcement powers. An ambulance district submitted a proposal for a tax measure entitled "Proposition Lifesavers". *Id.* at 635. A resident of St. Charles County challenged the submitted proposal on the basis that the language confused voters and requested the Election Authority to change the title. *Id.* The court determined that neither the election authority nor the court had the authority to rewrite a ballot proposition submitted by a special district. *Id.* at 639.

Nor does the BOEC have the power to investigate the conduct of campaigns within the FFSD or any other elements which might give rise to a constitutional violation. See *Wulfing v. Mooney*, 247 S.W.2d 722, 726 (Mo. en banc. 1952).

A more apt comparison to the BOEC's position is found in *Stavitsky v. Board of Elections in the City of New York*, 198 F.Supp. 2d 271 (E.D. NY 2002), where the court ordered plaintiff's name off the Democratic Party primary ballot. Pursuant to 42 U.S.C. § 1988, plaintiff and others filed suit in Federal court requesting the court to order, by preliminary injunction directed to the board of elections, requiring it place their names on the ballot. *Id.* at 272. Plaintiffs requested attorneys' fees pursuant to § 1988. *Id.* The court ruled that all defendants were liable for attorneys' fees with the exception of the board of elections, which was not responsible for any fees. *Id.* at 275. The court reasoned

that the plaintiffs were "not aggrieved by any action of defendant board, insomuch as defendant board upheld their petition". *Id.* The court found that the board, although not a wrongdoer, was named as a defendant "*to effectuate any relief that was granted*" by the court. *Id.* (emphasis added).

The issues of that case are remarkably analogous to our current situation. The BOEC is the only entity which can conduct an election and it has agreed to abide by any order of this Court to effectuate the Court's remedy.

The BOEC is an "election authority" as the term is used throughout Chapter 115 of the Missouri Revised Statutes. As an election authority, the BOE has the authority to "make all rules and regulations, not inconsistent with statutory provisions, necessary for the *registration of voters* and the *conduct of elections*." Mo. Rev. Stat. § 115.043 (2000). The Missouri legislature has not provided power to the BOEC to judge the constitutionality of acts of a school district or a statute to which it is subject.

The BOEC is authorized to conduct the FFSD's elections. Mo. Rev. Stat. § 162.351(2000). In doing so, the BOEC complies with the applicable statutes governing elections and all its actions are ministerial. See *Wulfing,* 247 S.W.2d at 726. As a ministerial board, it is not the BOEC's duty to determine the validity of a statute, an ordinance or a resolution to which must be obeyed. *Id.* As a ministerial board it is mandated to obey the Missouri Statutes and has no power to disobey a statute, even if the board believes it to be unconstitutional. *Id.* at 724. A ministerial board in the state does not have the authority or the ability to assume the authority, "to pronounce, in advance of

any judicial decision, that an act of the General Assembly was unconstitutional," so that it would not obey it. *Id.* The Missouri Supreme Court supported this holding by stating:

> Every law of the Legislature, however repugnant to the Constitution has not only the appearance and semblance of authority, but the force of law. It cannot be questioned at the bar of private judgment, and, if though unconstitutional, resisted; but must be received and obeyed as, to all intents and purposes, law, until questioned in and set aside by the courts.

*Id.* quoting *State v. Douglas,* 50 Mo. 93 (1872); see also *State ex rel. Board of Mediation v. Pigg*, 244 S.W.2d 75 (Mo. en banc. 1951).

The courts have held that if a ministerial board fails to obey the law, on the grounds that in its opinion that the law is unconstitutional, the board would be usurping the functions of the courts. *Id.* at 725.

The BOEC has no authority to direct FFSD as to when the school board elections will take place or the voting mechanism to utilize. Rather, the Missouri Statutes set forth the election process for seven member school districts. Mo. Rev. Stat. § 162.341 (2000); Mo. Rev. Stat. § 115.121 (2014).

The Missouri Statutes vest authority in seven member school districts to elect two school board members annually for three-year terms by the qualified voters of the school district, on the first Tuesday of April. Mo. Rev. Stat. § 162.341 (2000); Mo. Rev. Stat. § 115.121 (2014). As the election authority for St. Louis County, the BOEC conducts the FFSD's elections. Mo. Rev. Stat. § 162.351 (2000). The BOEC receives declarations of candidates for nomination for school board members from the District and conducts the election. In so doing, the BOEC performs its limited statutory duty. See Mo. Rev. Stat. § 115.023 (2000).

7

The Missouri Statutes vest authority in FFSD to collect the names of qualified candidates for school board and determine the order of candidates on the ballot. Mo. Rev. Stat. § § 115.124, 115.125 (2014). FFSD is responsible for certifying the names of the candidates to the BOEC. Mo. Rev. Stat. § 115.125 (2014). The BOEC has no express authority to add candidates to the ballot at the request of FFSD or by petition of a candidate after the tenth Tuesday prior to the election. *Id.* A candidate list can only be modified (to add or remove a name) pursuant to a court order. *Id.* The BOEC has no independent power to remove candidates from the ballot once their name is certified to the BOEC. After the certification deadline, a candidate may only withdraw pursuant to court order. *Id.*

### III

**The BOEC did not cause Plaintiffs to incur additional fees.**

Plaintiffs' fee request demonstrates it spent almost no time presenting a case against the BOEC.[1] Plaintiffs failed to explain the basis for their claim that the BOEC is liable under the Voting Rights Act. Careful examination of Plaintiffs' time records illustrate that no significant effort was exerted to prove the BOEC's liability. In the present matter, no pleadings in the case are directed to this issue. Plaintiffs argue the BOEC is liable and suggests the BOEC should be jointly and severally liable for the entire fee award. Such an award against the BOEC would be unreasonable considering

---

[1] Plaintiffs state they have expended 4,157.37 hours on this case. See Memo. for Attys. Fees, p. 7. Time records for eight attorneys and three paralegals were provided as Exhibits 1-8 of Plaintiff's Memorandum in Support. Of the total hours reported only 12.57 hours or 0.3% were expended on matters pertaining to the BOEC. See Exhibit A, attached hereto and incorporated herein.

the vastly greater time expended by Plaintiffs on FFSD compared with minimal attention Plaintiffs paid to the BOEC.

The comparative amount of time plaintiffs spent on making a case against one of two defendants was addressed in *Jenkins by Agyei v. State of Mo.*, 838 F.2d 260 (8th Cir. 1988). In this school desegregation case, plaintiffs sued the Kansas City Missouri School District (KCMSD) and the State of Missouri. *Id.* at 262. The district court awarded plaintiffs' attorneys fees against the State and declined to award fees against KCMSD. *Id.* at 262-63. The district court determined that the State of Missouri was the primary constitutional violator and although KCMSD was named a defendant, it did not cause the unlawful desegregation and admitted liability prior to trial. *Id.* at 263. The court held that KCMSD had not caused the plaintiffs to expend additional fees, as such, the district court awarded attorneys' fees only against the State. *Id.*

The State argued that fees should have been allocated on a 50-50 basis. *Id.* at 265. Affirming the District Court's award of fees to the State alone, the appellate court relied on the following rationale:

> The district court justified the allocation of the fee by pointing to its earlier conclusion that the State of Missouri was the primary constitutional violator. By contrast KCMSD did not cause the unlawful segregation but simply failed, as did the State, to disestablish the dual school system created by the State of Missouri and adopted policies which were ineffective in eliminating the unlawful segregation. Moreover, the court pointed to the fact that KCMSD had cooperated with the plaintiffs and had conceded liability prior to trial, while the State denied liability, thereby contributing to the necessity of a ten and a half month trial. Thus, in effect the district court concluded that KCMSD minimized the need for plaintiffs to incur attorneys' fees, while the State maximized the need. The district court based its award on the defendants' relative degrees of culpability and the time the plaintiffs were forced to spend litigating against the respective

9

> defendants. Both factors are appropriate considerations in determining who must shoulder the fees awarded.

*Id.* at 266; See also *Miller v. Moore*, 169 F.3d 1119, 1126 (8th Cir. 1999).

The appellate court held that the reasons provided by the district court were adequate to support the decision to place sole responsibility for fees on the State of Missouri. *Id.* at 267.

Similarly, in *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331 (1st Cir. 2008), the court was confronted with a fee request in a § 1983 lawsuit in which the primary defendant failed to answer and the court entered a default against him. *Id.* at 334. As such the defendant presented no challenge to his liabilities. *Id.* The district court found that joint and several liability was inappropriate *as a matter of law* and determined that an apportionment method of allocating fees was appropriate. *Id.* at 338. The basis for the apportionment award was the damages assessed against each defendant. *Id.*

The court of appeals agreed that joint and several liability would be inappropriate due to the extreme differences in the effort expended by plaintiffs in each case. *Id.* However, the court of appeals found that the trial court abused its discretion by basing is decision on the "relative liability" method of apportionment. *Id.* The appellate court found the trial court "should as a matter of law have used the 'time expended' method of apportionment and calculated the approximate time spent in litigating against each defendant." *Id.* at 339. When the time required to litigate against one defendant is "grossly disproportionate" to the time required to litigate against another defendant and

the two are not in privity, then the "time expanded" method of apportionment must be used. Id. The appellate court found that, based on the record, the district court did not:

> a]ppropriately weigh the disparity in time expended, nor did it offer any adequate justification for veering off in the direction of 'relative liability'. Fairness and equity dictate that, given this inequality and the apparent absence of any offsetting circumstances, the court should as a matter of law have used the "time expended" method of apportionment and calculated the approximate time spent in litigating against each defendant.

Id. at 339. See also Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 960 (1st Cir. 1984) (explaining that a court undertaking to fashion a fee award should "make every effort to achieve the most fair and sensible solution that is possible").

In *Torres-Rivera*, the time spent presenting a case against the lone defendant was grossly disproportionate to the amount of time spent in litigation against the defaulting defendant. Id. at 339. As such, the court held that the appropriate apportionment method was "time expended." Id.

The present case involves an even more dramatic difference between the Plaintiffs' efforts against FFSD and the BOEC. This case was tried to a conclusion without any allegation or determination of the nature of the BOEC's "liabilities" for violations of the Voting Rights Act. Plaintiffs never committed to writing its theory of liability as evidenced by the absence of any violations by the BOEC plead against it in the12 page Complaint. The BOEC attorneys did not participate in any portion of the liability phase of the trial. The absence of any finding by this Court regarding how the BOEC could be liable, makes it apparent that Plaintiffs failed to expend any significant effort to define and prove the liability of the BOEC. The BOEC's agreement to

participate in the implementation of a remedy was not an acknowledgment of liability. To the contrary, the BOEC voluntarily assumed the task of assisting in the implementation of a final order.

As previously discussed, the BOEC denies any responsibility for the violation or failure to enforce the Voting Rights Act by FFSD. Should the BOEC be found incorrect, examination of the record will show that the Plaintiffs spent only a small fraction of their time attempting to prove BOEC liability. Any order concerning payment of attorneys' fees should reflect that the presence of the BOEC and its conduct of the case should not expose the BOEC to liability for those minimal fees.

Respectfully submitted,

CROTZER & ORMSBY, LLC

*/s/ Darold E. Crotzer, Jr.*
Darold E. Crotzer, Jr., #19434MO
Kathryn B. Forster, #52923MO
130 S. Bemiston Ave., Suite 602
Clayton, MO 63105
314.726.3040
 314.726.5120 (fax)

dcrotzer@crtozerormsby.com
kforster@crtozterormsby.com


*Attorneys for Defendant St. Louis County Board of Election Commissioners*

## CERTIFICATE OF SERVICE

On February 24, 2017, a copy of the foregoing was electronically filed with the Clerk of the Court using the e-filing system, an electronic copy therefore being served on Anthony E. Rothert, Grant R. Doty, Andrew J. McNulty, Gillian R. Wilcox, Dale E. Ho, Julie A. Ebenstein, and M. Laughlin McDonald, Attorneys for Plaintiffs.

*/s/ Darold E. Crotzer, Jr.*