**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| MISSOURI STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, REDDITT HUDSON, F. WILLIS JOHNSON and DORIS BAILEY, | ) | |
| Plaintiffs, | ) | Civ. No. 4:14-cv-2077-RWS |
| v. | ) | |
| FERGUSON-FLORISSANT SCHOOL DISTRICT and ST. LOUIS COUNTY BOARD OF ELECTION COMMISSIONERS, | ) | |
| Defendants. | ) | |

**<u>DEFENDANT FERGUSON FLORISSANT SCHOOL DISTRICT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS</u>**

Plaintiffs Missouri State Conference of the National Association for the Advancement of Colored People, Doris Baily, Reddit Hudson and F. Willis Johnson request Defendants Ferguson Florissant School District ("FFSD") and the St. Louis County Board of Election Commissioners jointly and severally pay $1,137,919.95 in attorneys' fees and $232,320.42 in expenses for a total of $1,370,240.37.

Special circumstances warrant denying Plaintiffs' request for attorneys' fees and costs. FFSD had no choice but to litigate this matter and to litigate in a toxic environment that it did not create or control. If Plaintiffs' request is granted, the funds to pay this expenditure will be taken from the students Plaintiffs claim to support. FFSD urges this court to find that special circumstances render imposition of fees and costs unjust. If the court finds attorneys' fees are warranted, FFSD requests a substantial reduction based on its ability to pay.

If required, FFSD urges the court to reduce Plaintiffs' lodestar fee with an across-the-board cut for inflating the cost of litigation by bifurcating this proceeding and requiring the parties to litigate single member districts twice. In addition, Plaintiffs request fees for issues they did not prevail; and Plaintiffs overstaffed this case with multiple highly paid senior attorneys and multiple highly paid junior associates. Each of these issues merits a substantial reduction.

Finally, costs can be considered separate from attorneys' fees. The court has more discretion to deny costs than fees. For that reason, FFSD requests this court either deny costs or substantially reduce them.

If fees and costs are warranted, FFSD and Plaintiffs agree that joint and several liability applies. Any amount awarded should be split evenly among both defendants to this action.

## I. <u>BACKGROUND</u>

### A. Relevant facts from litigation.

Plaintiffs filed their Petition on December 18, 2014. However, Plaintiffs' began their research in August 2014. See, ECF 237-2, Page ID# 9378. Plaintiffs had a draft of their single member district plans drawn by December 5, 2014 and had an expert report recommending such plans around February 2015.[1]

By the time the Complaint was filed, Plaintiffs had contacted four experts.[2] They had already completed a witness and proof chart; and two attorneys had stayed at the Chase Park Plaza on multiple nights.[3] In sum, Plaintiffs had a detailed litigation plan and strategy very early in this litigation.

---

[1] ECF 237-2, Page ID# 9378 and ECF 237-4, Page ID#9799.
[2] ECF 237-2, Page ID# 9378.
[3] ECF 237-2, Page ID# 9378 and #9407.

On May 20, 2015, the parties argued FFSD's Motion to Amend the Case Management Order. FFSD had requested the Court postpone the trial date from January 2015 to June 2015 to accommodate the complexity of the case.[4] Plaintiffs argued against the Motion stating, "We don't think that it's a terribly factually complicated case."[5] This is after they had thoroughly investigated the case for approximately nine months and could credibly make that statement.

In the same hearing, Plaintiffs insisted that a remedial plan could be implemented by the April 2017 election. That insistence was based on their argument that a separate remedial phase was unnecessary.[6] In fact, Plaintiffs insisted they would include their proposed remedial maps with their summary judgment motion. *Id*. ("We didn't bifurcate the trial proceedings. There's no reason why a remedial map couldn't be submitted with both our summary judgment motion or couldn't be submitted for trial." *Id*.) While FFSD argued that approach would be confusing, Plaintiffs insisted it was appropriate.[7]

At trial, Plaintiffs advocated this court need not analyze their proposed remedial maps until the separate remedial phase. This Court adopted that strategy and stated it would consider arguments about the effectiveness of the remedy at that time. [8] Thus, Plaintiffs decided to forego collapsing the liability and remedial phase in favor of bifurcating the proceedings.

The parties fully briefed remedies in September and October 2016. Plaintiffs hired two experts to generate and analyze their new proposed remedies. These proposals were entirely different than the remedies proposed in the liability phase. [9] As a result, FFSD had to hire its

[4] ECF 59.
[5] Plaintiffs' statement in March 2015 that this case is not complicated is at complete odds with Plaintiffs' current assertion that it is complicated. See, ECF 59 p. 17 and ECF 237 p. 6.
[6] ECF 59, p. 17.
[7] ECF 59, p. 18.
[8] ECF 185, p. 29.
[9] ECF 201-3.

expert to analyze these new remedies and to litigate an entire phase that Plaintiffs admitted could have been avoided.[10]

**B. Plaintiffs' motion for attorneys' fees and costs.**

Plaintiffs argue they are entitled to $1,137,919.95 in attorneys' fees and $232,320.42 in expenses. That amount is based on 4,157.37 attorney hours and 538.21 paralegal hours. Plaintiffs voluntary reduced their fees by 285.45 hours. They also made a 20% reduction of out-of-state counsels' fees.

Plaintiffs also argue that any award of fees and costs is appropriately apportioned between both defendants. Plaintiffs and FFSD agree on that point. The St. Louis County Board of Election Commissioners cannot avoid payment of fees and costs for failing to offer a robust defense. If an expenditure is warranted, then both parties share equally in any culpability or lack thereof. Both parties were following state law in holding at-large elections. Neither party could voluntarily agree to violate state law. An equal apportionment of fees jointly and severally is appropriate.

**II. <u>LEGAL STANDARD</u>**

Section 1973*l* (e) of the Voting Rights Act, 42 U.S.C. § 1988 states that in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." The Supreme Court holds that a prevailing civil rights plaintiff is ordinarily entitled to recover attorney's fees "unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968).

---

[10] In particular, both parties litigated and analyzed single member districts twice.

Plaintiffs may be considered a prevailing party "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). However, it is up to the district court to determine what fee is reasonable. *Id*. The analysis begins by calculating the lodestar fee of number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id*. The district court should exclude hours that were not reasonably expended. *Id*. at 434.

"Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990). The district court can adjust the lodestar downward if it is not reasonable in light of the results obtained. *Id*. quoting *Hensley*, 471 U.S. at 434-37. "This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims. This adjustment should be taken independently of the other adjustments and should be the first adjustment to the lodestar." *Rode,* 892 F.2d at 1184.

The goal in determining hours reasonably expended is "to do rough justice, not to achieve auditing perfection. Trial courts need not, and indeed should not, become green-eyeshade accountants….Accordingly, district courts may make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *Favors v. Cuomo*, 39 F.Supp.3d 276, 291 (E.D. NY 2014) internal citations omitted.

If the court finds that an award of fees is warranted in a civil rights case, it must consider a party's ability to pay to determine "the reasonableness of the attorneys' fees under the particular circumstances of this case." See, *Roth v. Green*, 466 F.3d 1179, 1194 (10th Cir. 2006) "all the courts of appeals which have addressed the issue have concluded that a nonprevailing

[party's] ability to pay is not a proper factor to consider in determining *whether* to award attorneys' fees, but may be considered when determining the *amount* of the attorneys' fees to be awarded against that party." *Id*. quoting *Wolfe v. Perry*, 412 F.3d 707, 723-24 (6th Cir. 2005).

The decision to allow the prevailing party to recover costs "is entrusted to the sound discretion of the district court. As a result, district courts routinely direct that prevailing parties are not entitled to Rule 54(d) costs through concise orders, frequently no longer than a sentence." *Hastert v. Illinois State Board of Election Com'rs*, 28 F.3d 1430, 1437 (7th Cir. 1993). *Hastert* holds that district courts have broad discretion to award or deny costs. *Id*. at 1438.

## III. ATTORNEYS' FEES ARGUMENT

### A. Special circumstances render an award of fees and costs unjust.

The district court has discretion on whether to any award attorneys' fees and costs. While FFSD admits the prevailing party is typically awarded fees, the special circumstances in this case make such an award unjust.

First, the at-large electoral structure is mandated by Missouri law. See, §§ 162.261 and 162.291 RSMo. Every school district in the state, with few exceptions, maintains this form of an election. FFSD could not simply agree to violate state law to avoid litigation. Instead, it was required to litigate because it was required to follow Missouri law. The only way out was through court order.

Second, Plaintiffs' counsel began searching for a way to sue FFSD the same month that Michael Brown was shot. Michael Brown died on August 9, 2014.[11] Plaintiffs' counsel seeks to

[11] See, https://www.nytimes.com/interactive/2014/08/13/us/ferguson-missouri-town-under-siege-after-police-shooting.html?_r=0

bill FFSD for dozens of hours of research beginning August 21, 2014.[12] That the civil unrest and litigation research occurred within two weeks of each other is no coincidence. Plaintiffs' counsel sought to capitalize on the unrest involving the police and the City of Ferguson to hold the school district liable under the Voting Rights Act. FFSD was not involved in these events and acted in every way possible to protect its students against any potential harm. Yet FFSD was in the eye of the perfect storm. It had no choice but to litigate in an angry environment it did not create and was not involved.

Third and most important, the students that Plaintiffs claim to protect will be harmed by payment of these fees. This request is an unbudgeted expenditure that will widen the gap between their education and others with greater resources. See, Ex. A ¶11.

As this court has acknowledged, this is a unique and difficult case. It is also one whereby special circumstances exist to render an award of fees and costs unjust. Holding this school district responsible for Plaintiffs' unreasonable litigation fees and costs is harms the very students Plaintiffs claim to protect. FFSD respectfully requests this court adopt the narrow exception for special circumstances to deny an award of fees and costs.

**B. The lodestar fee should be adjusted based on FFSD's ability to pay.**

Multiple circuits have held that a district court must consider a party's ability to pay when determining the amount of attorneys' fees to be awarded against that party. See, *Roth*, 461 F.3d at 1194 *citing* the Tenth, Sixth, Fifth and Ninth Circuit's adoption of that rule.[13] In this case, FFSD does not have the ability to pay Plaintiffs' requested fees and costs without harming the students Plaintiffs claim to support.

---

[12] ECF 237-2 Page ID #9378.

[13] FFSD has not uncovered a case in the 8th Circuit that addresses this issue.

Courts "have a special responsibility to ensure that taxpayers are required to reimburse prevailing parties for only those fees and expenses actually needed to achieve the favorable result. *Barrett v. West Chester University of Pennsylvania of the State System of Higher Education*, 636 F.Supp.2d 439, 445 (E.D. PA 2009) citing *Role Models Am., v. Brownlee,* 353 F.3d 962, 975 (D.C.Cir.2004).

In school desegregation cases, courts have been "careful to hold awards to the amount necessary to achieve the purpose of the award and no more. The use of public funds for attorney fees in those cases makes less funds available for the education of the children sought to be benefitted." *Id*. internal citations omitted.

"Attorney fee entitlement cannot jeopardize the financial realities of the agency paying the fees. Certainly the payment of fees awarded herein – and not budgeted – will affect school programming…While this aspect of the case is not pivotal to our overall determination of fees, it certainly cannot be blindly disregarded." *Id*. internal citations omitted. Again, the ability to pay is not considered to determine *whether* to award fees, but is considered in determining the amount awarded. *Roth*, 466, F.3d at 1194.

FFSD has not budgeted for the award of attorneys' fees and costs. See, Ex. A ¶5. Moreover, FFSD has been in financial constraints since 2007 when its tax base began to decrease due to foreclosures and lower property values. See, Ex. A ¶3. With that in mind, if Plaintiffs are granted their entire request for fees and costs, student services will suffer and any growth and innovative solutions to the problems Plaintiffs claim as concerns cannot be addressed. See, Ex. B ¶¶8-11.

FFSD submits the interests and education of all of our children are its ultimate priority and goal. Plaintiffs counsel's request for exorbitant fees in this period of financial distress is

simply unreasonable. FFSD has sought to economize FFSD's resources by utilizing its local counsel as lead attorneys and hiring only one expert. See, Ex. C ¶¶8-9. In contrast, Plaintiffs hired eight attorneys, including four senior attorneys, and four experts. See, Ex. C ¶¶8-9. These expenses are simply unreasonable under the circumstances of this case. (The district court may take FFSD's finances into consideration despite the success and competence of Plaintiffs' counsel. *Barret*, 636 F.Supp.2d at 446.)

FFSD submits that an in-depth analysis and understanding of its finances is difficult to relay in this Memorandum. For that reason, Chief Financial Officer Laura Modrusic and/or Superintendent Dr. Joe Davis can be made available to answer any specific questions. These representatives can be called at a motion hearing or any other method this court suggests.

For the above reasons, FFSD requests this Court reduce Plaintiffs' lodestar fees by at least 75%. ("Because fees are at bottom an equitable matter,…the courts should not hesitate to take the relative wealth of the parties into account. *Id*. at 445 quoting *Rogers v. Kroger* Co., 586 F.Supp. 597, 601 (S.D.Tex.1984).) Should this court decide to award fees, FFSD submits this amount would balance Plaintiffs' victory with the financial stress any award places on students.

**C. Plaintiffs' strategy to bifurcate the proceedings resulted in duplicative costs and fees.**

Plaintiffs' decision to bifurcate this proceeding into separate liability and remedial phases increased the cost of this litigation substantially. Plaintiffs were initially opposed to bifurcation because they wanted a remedy in place by the April 2014 election. However, that strategy was completely reversed by trial.

By trial, Plaintiffs were relying on a separate remedial phase. Any thought to a single proceeding was forgotten. This change required the parties to re-analyze potential remedies after the trial. Both parties hired and paid experts and both parties litigated the advantages and

disadvantages of the proposed remedies a second time. This duplication of expert and attorney fees was most apparent in analyzing single member districts. Both William Cooper and Richard Engstrom were hired to create a second set of single member districts.[14] Plaintiffs' attorneys billed substantial sums for working on the remedies brief including single member districts.[15] FFSD should not be required to pay for this duplication of effort. As a result, FFSD requests an across-the-board reduction of 30% to account for the bifurcated trial and duplicative litigation of single member districts.[16]

**D. Plaintiffs were unsuccessful in claiming Dr. McCoy's resignation demonstrated unresponsiveness in Senate Factor 8.**

This court can adjust the lodestar downward for time spent litigating wholly or partially unsuccessful claims. *Rode,* 892 F.2d at 1184. Plaintiffs were not successful in convincing the court that FFSD's failure to explain Dr. McCoy's resignation demonstrated unresponsiveness to the African American community.[17]

Plaintiffs' focus on Dr. McCoy was disproportional to its need to prove Senate Factor 8. Yet, Plaintiffs strenuously litigated the issue. They made discovery requests, filed a motion to compel McCoy's personnel file, drafted a protective order, spoke with McCoy's legal counsel, and elicited witness testimony.[18] Still, this court was not convinced.[19]

---

[14] See, ECF 237-2, p. 324, Page ID #9693 and ECF 237-2, p. 370-371 and Page ID # 9739-9740.

[15] See for example, ECF 237-2, p. 24-25, Page ID #9393-9394.

[16] FFSD is not requesting this court reduce the lodestar fee to a negative amount. Each request for reduction demonstrates FFSD's best approximation for the amount appropriate under the circumstances. Since every request is subject to this court's discretion, FFSD inserted percentages and numbers based on its reasonable belief of effort expended and/or funds available. The request to decrease the lodestar according to its ability to pay can be considered an independent request or in addition to the above requests.

[17] ECF 185, pp. 103-104.

[18] See, for example ECF 33, 35, 37, 38, 41 and more.

[19] ECF 185, pp. 103-104.

Plaintiffs' lack of success on this issue warrants a 5% reduction in the lodestar fee. The across-the-board cut is warranted because it is difficult to distinguish time spent litigating the McCoy issue from the time litigating other senate factors and issues. For example, witnesses were prepped and testified to the senate factors. The billing records do not indicate what amount of time was spent in preparation on McCoy testimony versus anything else. While there are a significant number of bills that do state they were in furtherance of this issue, there is no way to determine the exact amount with the evidence Plaintiffs offer. For that reason, FFSD believes a 5% reduction is reasonable.

FFSD requests a corresponding reduction in costs. See, *Favors v. Cuomo*, 39 F.Supp.3d 276, 309 (E.D.NY 2014) that denies attorney's fees and costs for limited success; and citing additional district court cases that reduce the award of costs by the same percentage as attorney's fees based on limited success.

**E. Plaintiffs seek reimbursement for hours unrelated to the litigation.**

Plaintiffs attempt to bill FFSD for fees that are unrelated and unreasonable. For example, Plaintiffs' most senior counsel attempts to bill FFSD for time spent reading and writing about a memoir he read about Frankie Freeman. At his billable rate, that amounts to $2,025 he seeks for reading *The Song of Faith and Hope: The Life of Frankie Muse Freeman*.[20]

In addition, two out-of-state attorneys billed for time spent preparing, attending and traveling to a community meeting. One attorney bills for a "community meeting" while the other attorney labels it a "Grade A for Change" meeting.[21] They seek reimbursement for 2.25 hours at

[20] ECF 237-3, Ex. 3, Page ID #9763.
[21] ECF 237-2, page 19, Page ID # 9388 and ECF 237-5, Ex. 5, Page ID #9818.

$300/hour and 10.52 hours at $220/hour for a total of $2,989.40.[22] While it is possible this meeting had to do with the litigation, it is equally possible this meeting involved rallying or organizing the community. Without more information, FFSD objects to this expense.

There are other fees that have questionable relevance to this litigation. For instance, two attorneys bill for a "DOJ pitch call."[23] While FFSD can speculate as to the substance of the "pitch," it appears that the pitch was unsuccessful because the DOJ was not involved with this litigation. Even if Plaintiffs had been successful, reimbursement for the call and preparation is questionable. Additional questionable bills are charges for attending a "court technology meeting"[24] and charges for drafting and reviewing retainer agreements.[25]

FFSD requests the court subtract the above amounts from Plaintiffs' fee request.

**F. Plaintiffs overstaffed the case.**

Plaintiffs seek reimbursement for staffing this case with eight attorneys that bill from $275 to $450 an hour. The height of overcrowding occurred during trial. Plaintiffs' constant reshuffling during trial led this court to quip about their playing musical chairs. Plaintiffs' lead attorneys are qualified and competent. There was simply no need to staff this case with multiple highly paid out-of-state attorneys and multiple highly paid new lawyers. ("Plaintiffs are not entitled to have any number of well-qualified attorneys reimbursed for their efforts, when fewer attorneys could have accomplished the job." *Ky. Rest. Concepts Inc. v. City of Louisville*, 117 Fed. Appx. 415, 419 (6th Cir. 2004). See also, *Morse v. Republican Party*, 972 F.Supp. 355, 368 (W.D. Va. 1997) (10% reduction based on duplication of effort and overstaffing.)

---

[22] At least one bill includes time spent on preparing for a status hearing and for the Grade A for Change/community meeting. See, ECF 237-5, Ex. 5, Page ID #9818. FFSD has no way to separate that bill.
[23] See, ECF 237-5, Ex. 5, Page ID 9817 billing for 1.33 hours at $220/hour on 10/19/15 and ECF 237-2, Ex. 2, Page ID #9387 billing for 1.0 hours at $300/hour for "Call with DOJ regarding interest in case" for a total of $592.60.
[24] ECF 237-5, Ex. 5, Page ID #9823 on 1/9/2016 for 1.91 hours at $220/hour.
[25] ECF 237-1, Ex. 1, Page ID #9309 on 1/5/15.

Plaintiffs staffed this case with four highly qualified senior attorneys whose rates range from $365 to $450 per hour.[26] These fees amount to 2,302.24 billable hours for a total of $740,794.50.[27] In addition, Plaintiffs staffed the case with four highly paid associates whose experience ranges from no experience outside of clerking yet billing at $250 per hour[28] to one year of experience billing at $275 an hour.[29] The fourth attorney has been out of law school approximately seven years and bills at $275 an hour.[30] These four associates billed 1,454.54 hours for a total of $329,849.30.[31] While FFSD does not take issue with senior attorneys' hourly rate, it does submit that the associates' rates are out of line with prevailing market rates for attorneys with limited to no experience. See, Ex. C ¶10.

This overstaffing led to duplication of effort. For example, seven attorneys bill for time spent on summary judgment.[32] Six of those attorneys bill for time spent on the trial brief.[33] As for the time spent at trial, Plaintiffs bill for four attorneys and a paralegal for days 1, 2, 3, and 5; and three attorneys and a paralegal on days 4 and 6.[34] Anywhere from three, to all four of Plaintiffs' senior attorneys, billed for five of the six days of trial.[35]

---

[26] A list of these attorneys with their hours and rates can be found in ECF 237 p. 11.
[27] This amount is the sum of the attorneys' discounted rates. See, ECF 237 p. 11.
[28] See, ECF 237-6 Ex. 6 Page ID #9829.
[29] See, ECF 237-6, Page ID #9828.
[30] See, ECF 237-7, Ex. 7 Page ID #9835.
[31] See, ECF 237, p. 11, Page ID #9294.
[32] See for examples but not exhaustive, ECF 237-5, Page ID #9814, ECF 237-4, Page ID 9801; ECF 237-237-6, Page ID #9831; ECF 237-7, Page ID #9838; 237-3, Page ID #9765; ECF 237-1, Page ID #9312; and ECF 237, Page ID #9385.
[33] See for examples but not exhaustive, ECF 237-2 Page ID #9388 (JE); ECF 237-5 Page ID #9819 (SL); ECF 237-4, Page ID #9802 (DH); ECF 237-6 Page ID #9832(JS); ECF 237-3 Page ID# 9765 (LM); and ECF 237-1 Page ID #9327 (TE).
[34] ECF 237-2, p. 22, Page ID #9391 (JE); ECF 237-2, P. 33, Page ID # 9042 (MR); ECF 237-3, P. 14, Page ID #9766 (LM); ECF 237-7, p. 5, Page ID #9838 (GW); ECF 237-6, P. 6, Page ID #9833 (JS); ECF 237-5, p. 21, Page ID #9824 (SL); ECF 237-1, p. 38-39, Page ID #9336-9337 (TR); ECF 237-4, p. 11, Page ID #9802 (DH)
[35] Same as FN 19.

Plaintiffs did not bill for all attorneys that attended the trial when they were not questioning witnesses.[36] However, Plaintiffs utilized a different attorney for each witness per day. Therefore, they were able to maximize their billing by allowing as many attorneys as possible to participate. This is simply a means to unreasonably increase billing.

FFSD requests this court deduct 10% of the lodestar fee for Plaintiffs' overstaffing.

## IV. LEGAL ARGUMENT REGARDING COSTS.

The court may require the parties to bear their own costs. *Hastert*, 28 F.3d at 1437. For that reason, FFSD respectfully requests this court deny Plaintiffs' request. As with fees, FFSD is not in a position to incur such costs without imposing on the students Plaintiffs seek to protect.

### A. Plaintiffs seek reimbursement for unreasonable amounts and duplicative costs.

If the court decides to impose costs, FFSD requests the court subtract for unreasonable amounts or duplicative work. The largest cost was for the services of Dr. Richard Engstrom. He was paid $141,000 for his work on this case.[37] While this expert worked on both the liability and remedial phases, FFSD has already argued much of this duplication could have been avoided. See, Section III.C. However, it is the sheer amount requested that is unreasonable. This one expert accounts for approximately 60% of Plaintiffs' costs.[38] Plaintiffs paid for three experts, flights, hotels, transportation, meals, and miscellaneous other expenses with the remaining 40% of the request.

Engstrom's hourly rate is $450/hour. FFSD acknowledges Engstrom is an experienced expert, however, that rate is simply unreasonable under these circumstances. FFSD cannot afford to pay that much and would never willingly do so.

---

[36] ECF 237, p. 10.
[37] ECF 237-2, p. 356, Page ID #9725.
[38] This is calculated by dividing the overall costs by the amount paid to Dr. Engstrom.

**B. Plaintiffs seek reimbursement for unreasonable costs.**

Plaintiffs seek reimbursement for hotel accommodations at St. Louis' nicest hotels, meals at St. Louis' nicest restaurants, valet parking and miscellaneous additional expenses that are unwarranted under these circumstances.

Plaintiffs' attorneys stayed at St. Louis' nicest hotels such as the Chase Park Plaza, the Cheshire and the Moonrise.[39] In addition, Plaintiffs bill for valet parking on multiple occasions and even for eating at Tony's Restaurant.[40]

Plaintiffs seek $2,965.80 to rent work space at the Westin Hotel and for high speed internet access.[41] Since the ACLU has an entire office from which to work already, this cost is extremely high and unnecessary.

The cost for this extravagance needs to be placed in perspective. Over 60% of all students in FFSD qualify for free or reduced lunch.[42] The funds to support these students should not be diverted to pay for the Chase Park Plaza. While there are additional miscellaneous expenses sought by Plaintiffs, the overall request for costs is duplicative and unreasonable under these circumstances. For the reasons cited above and due to its financial constraints, FFSD requests reduction of at least 75% of the requested costs.

**V. <u>JOINT AND SEVERAL LIABILITY APPLIES</u>.**

The St. Louis County Board of Election Commissioners ("BOEC") is a co-defendant in this action. Plaintiffs seek joint and several liability against both FFSD and the BOEC. FFSD

---

[39] See, ECF 237-2, page 38, Page ID#9407 (Chase); ECF 237-2, page 39, Page ID# 9408; ECF 237-2 (Chase), page 39, Page ID# 9408 (Moonrise); and ECF 237-2, page 43, Page ID #9412 (Cheshire).
An additional problem with staying at these nice hotels is that the costs for services are also high. For example, Plaintiffs frequently paid $25 per day for breakfast at the Chase Park Plaza. See, ECF 237-2, Page 53, Page ID #9422 and ECF 237-2, Page 115, Page ID #9484 charging $25.13 for each breakfast.

[40] ECF 237-2, page 123. Page ID #9492 (valet parking); and 237-2, Page 201, Page ID 9570 (Tony's).

[41] ECF 237-2, page 43, Page ID #9412.

[42] ECF 1, p. 4.

urges this court to deny awarding costs and fees against it due to the special circumstances of this case. However, if such fees are warranted, both defendants are jointly and severally liable.

Section 2 of the Voting Rights Act provides that no “standard, practice, or procedure shall be imposed or *applied* by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color.” 52 U.S.C.A. § 10301(a). This court found that the at-large system in FFSD results in a denial of the right to vote on account of race. The BOEC applied that system. It is equally responsible for any costs and fees that result from that application.

There can be no doubt that the BOEC violated the Voting Rights Act when it conducted at-large elections. Neither party could have independently created a Voting Rights Act violation. FFSD has absolutely no authority to conduct its own elections. That is the sole responsibility of the BOEC. Thus, even if FFSD had created the at-large system, which it did not, it could not independently violate the VRA if the BOEC never applied it.

Plaintiffs are the prevailing party in this litigation. While FFSD argues special circumstances and adjustments to the lodestar are appropriate, it admits plaintiffs succeeded in achieving some of the benefit they sought in bringing suit by changing the electoral system from pure at-large to cumulative at-large. See, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). That change effects the way both FFSD and the BOEC conduct elections. Thus, unless the BOEC has special circumstances that make an award unjust, it must share in the costs and fees.

The BOEC may claim it is not responsible for fees because it took no position on the outcome of the case. However, the Eighth Circuit holds that a nominal defendant is not excused from having to share in the attorneys’ fees awards. (See, *Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999) holding that the argument that a defendant did not actively participate and

should not be responsible for attorney's fees is without merit.) In *Carhart,* the court held that the minor defendant's assertion that he would enforce the unconstitutional statute was enough for him to share in the fees. In this case, the BOEC actually did enforce the statutes. Thus, joint and several liability is clearly warranted.

In *Hastert v. Illinois State Board of Election Commissioners*, 28 F.3d 1430, 1444 (7th Cir. 1993), the election board was described as a "nominal defendant [that] has no interest in the eventual outcome except that there *be* an outcome which it can implement." (court emphasis) The court held that "liability is usually imposed on a neutral (and nominal) defendant" and fees are awarded to the relatively successful *plaintiffs*. *Id*. (emphasis added) Since *Hastert* maintained multiple sets of plaintiffs who claimed entitlement to fees, the Court had to judge the relative success of plaintiffs against each other. *Id*.

In this case, BOEC was able to rely on FFSD's defense to lower its attorneys' fees. As discussed above, neither party had the authority to change state law. Both parties were operating according to state law and could only change through court order. The BOEC could not have avoided litigation any more than FFSD.[43] The BOEC should not be able to double dip and reap the benefits of FFSD's defense and to leave FFSD paying the costs and fees.

FFSD respectfully requests this deny attorneys' fees and costs. Alternatively, FFSD requests this court order defendants share equally in the joint and several liability incurred.

**VI. <u>CONCLUSION</u>**

FFSD submits that the special circumstances of this case render an award of fees unjust. However, if the court awards fees, FFSD implores the court to consider its ability to pay in

[43] FFSD admits that the BOEC may have taken a less resistant path had FFSD not been involved. Since the fees and costs incurred they would have incurred cannot be known, the BOEC should be equally responsible for the costs and fees that did occur.

determining the amount. A substantial award will jeopardize the education and programs Plaintiffs claim to support. In addition or independent of its ability to pay, there are multiple additional areas to reduce the amount requested. Both parties' overarching concern should be to protect the welfare of our students. Any gain Plaintiffs sought through this litigation would be lost if students are harmed in the process.

FFSD requests this court consider holding this motion in abeyance until the appeals process is complete.

Respectfully submitted,
CROTZER & ORMSBY, LLC

*<u>/s/ Angela Bullock Gabel</u>*
Angela Bullock Gabel, 58227MO
Cindy Reeds Ormsby, 50986MO
130 S. Bemiston Ave., Suite 602
Clayton, MO 63105
314.726.3040 / 314.726.5120 (fax)
agabel@crotzerormsby.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that she is a person of such age and discretion as to be competent to serve papers. It is further certified that on February 28, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such to all named parties below:

Anthony E. Rothert
Andrew J. McNulty
Jessie M. Steffan
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Mo 63108
*Counsel for Plaintiffs*

Dale Hoe
Julie A. Ebenstein
Sophia Lin Lakin
ACLU Voting Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
*Counsel for Plaintiffs*

M. Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303
*Counsel for Plaintiffs*

Gillian R. Wilcox
ACLU of Missouri
3601 Main Street
Kansas City, MO 64111
*Counsel for Plaintiffs*

Darold E. Crotzer, Jr.
Kathryn B. Forster
130 S. Bemiston Ave., Suite 602
Clayton, MO 63105
*Counsel for Defendant St. Louis County Board of Election Commissioners*

*/s/ Angela Bullock Gabel*